SEAN P. NALTY (SBN 121253)
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
525 Market Street, 17th Floor
San Francisco, California 94105
Telephone: (415) 433-0990
Facsimile: (415) 434-1370

Attorneys for Plaintiff and Cross-Defendant
BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE OFFICE

BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA,

Plaintiff,

vs.

BRANDON STAUFFER,

Defendant.

---

BRANDON STAUFFER,

Cross-Complainant,

vs.

BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA,

Cross-Defendant.

Case No.: C 07-02622 RMW

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF AND CROSS-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Date: May 9, 2008
Time: 9:00 a.m.
Courtroom: 6
Judge: Hon. Ronald M. Whyte

Accompanying Documents:

1. Notice of Motion and Motion
2. Declaration of Lisa Kraeutler
3. Proposed Order

TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. SUMMARY OF ARGUMENTS ........ 1

III. PERTINENT FACTS ........ 2

A. Stauffer's Employment with Domain ........ 2

B. Stauffer's Claim for Disability Benefits under the Policy ........ 2

C. The Domain Emloyee Welfare Benefit Plan ........ 2

IV. LEGAL ARGUMENT ........ 3

A. Determining That an ERISA Plan Exists is Appropriate on Summary Judgment ........ 3

B. The Domain Plan Meets the Statutory Definition of an ERISA Plan ........ 4

1. A Plan, Fund or Program Established or Maintained by Domain ........ 4

2. The Participants and the Benefits ........ 6

C. The Donovan Factors ........ 6

D. Safe Harbor Provisions ........ 7

E. This Matter Still is Governed by ERISA even though Domain Chose Individual Disability Policies ........ 9

F. ERISA Preempts Stauffer's Common Law Claims for Relief In the Cross-Claim ........ 12

# TABLE OF AUTHORITIES

**Cases**

*Agrawal v. Paul Revere Life Ins. Co.*, 205 F.3d 297, 301 (6th Cir. 2000) .......... 9

*Carver v. Westinghouse Hanford Co.*, 951 F.2d 1083, 1086 (9th Cir. 1991) .......... 5

*Chamblin v. Reliance Std. Life Ins. Co.*, 168 F. Supp. 2d 1168, 1171 (N.D. Cal. 2001) .......... 8

*Cinelli v. Security Pac. Corp.*, 61 F.3d 1437, 1442 (9th Cir. 1995) .......... 7

*Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987) .......... 4

*Crull v. Gem Ins. Co.*, 58 F.3d 1386, 1390 (9th Cir. 1995) .......... 3

*Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982) .......... passim

*Hollis v. Provident Life & Accident Ins. Co.*, 259 F.3d 410, 416 (5th Cir. 2001) .......... 10

*Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 491-492 (9th Cir. 1988) .......... 4, 7

*Massachusetts Casualty Ins. Co. v. Reynolds*, 113 F.3d 1450, 1453 (6th Cir. 1997) .......... 9

*Morris v. Paul Revere Ins. Group*, 986 F. Supp. 872 (D.N.J. 1997) .......... 9

*Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 407 (9th Cir. 1994) .......... 4, 9, 10, 11

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) .......... 12

*Providence Health Plan v. McDowell*, 385 F.3d 1168, 1175, 1176 (9th Cir. 2004) .......... 12

*Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 842 (9th Cir. 1994) .......... 3

*Scott v. Gulf Oil Corp.*,
754 F.2d 1499, 1503 (9th Cir. 1985) ........ 4, 7

*Sipma v. Mass. Cas. Ins. Co.*,
256 F.3d 1006 (10th Cir. 2001) ........ 10

*Stenson v. Jefferson Pilot Fin. Ins. Co.*,
2007 U.S. Dist. LEXIS 45067 *11 (E.D. Cal. 2007) ........ 4

*Stuart v. UNUM Life Ins. Co. of America*,
217 F.3d 1145, 1153 (9th Cir. 1999) ........ 8

*Welch v. New York Life Ins. Co.*, 2001 U.S. Dist. LEXIS 16934 (N.D. Cal. 2001) ........ 8

**Statutes**

29 C.F.R. § 2510.3-3(b) ........ 11
29 C.F.R. § 2510.3-3(c)(1) ........ 11
29 C.F.R. § 2510.3-1(a)(1) ........ 7
29 C.F.R. § 2510.3-1(j) ........ 4
29 U.S.C. § 1002(7) ........ 6
29 U.S.C. § 1135 ........ 7
29 USCS § 1002 ........ 6
29 USCS § 1002(1) ........ 3, 4, 5, 6

Plaintiff and cross-defendant Berkshire Life Insurance Company of America ("Berkshire Life") and cross-defendant Guardian Life Insurance Company of America ("Guardian") (collectively "Berkshire") hereby move for summary judgment on all of the common law claims for relief alleged in the cross-claim filed in this matter by defendant and cross-claimant Brandon Stauffer ("Stauffer"). Each common law claim for relief is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").

## I.   INTRODUCTION

As part of a benefit package offered to him by his employer Domain Associates, LLC, ("Domain"), Stauffer was issued an individual disability policy ("the Policy") by Berkshire Life. In filling out the application for the Policy ("the Application"), Stauffer concealed material medical information from Berkshire. Berkshire rescinded the Policy and refunded the premium.

Berkshire then brought this declaratory relief action under ERISA to confirm the rescission. Stauffer filed a cross-claim in which he alleges common law claims for relief for breach of contract, breach of the covenant of good faith and fair dealing, fraud, and intentional infliction of emotional distress ("the Cross-Claim"). He claims that the Policy should not have been rescinded and that he is entitled to monthly disability benefits under the Policy. The Cross-Claim, ¶ 15-28.

## II.   SUMMARY OF ARGUMENTS

Stauffer's common law claims for relief alleged in the Cross-Claim are preempted by ERISA. As established by the Declaration of Lisa Kraeutler, the Controller for Domain, the Policy issued to Stauffer by Berkshire Life was part of an employee welfare benefit plan provided by Domain to its employees ("the Domain Plan"). Declaration of Lisa Kraeutler ("Kraeutler Decl."). ¶¶ 1-7. Domain provided health, life, and disability insurance to all its employees and paid the premiums under each policy, including the Policy issued to Stauffer by Berkshire Life. *Id.* at ¶¶ 1, 2, & 4. Domain performed administrative functions. *Id.* at ¶¶ 4, 5, & 6. As demonstrated below, the undisputed facts contained in the Kraeutler declaration establish that the Domain Plan meets the definition of an ERISA plan under 29 U.S.C.S. § 1002(1), meets the

factors stated in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982), and does not come under the Safe Harbor regulations.

## III. PERTINENT FACTS

### A. Stauffer's Employment with Domain

Stauffer was an employee of Domain. Kraeutler Decl., ¶ 1. He began working as an analyst on September 15, 2001. Stauffer signed the employment offer letter he received from Domain, thus accepting and agreeing to the terms of the offer ("the offer letter"). *Id.* at ¶ 1 & Ex. A.

The offer letter states the following: "As an employee of Domain Associates, L.L.C. you will be entitled to the following fringe benefits. Coverage in all plans is subject to acceptance of your applications by the various insurance companies." Kraeutler Decl., ¶ 1 & Ex. A. The offer letter goes on to state that the fringe benefits include profit sharing, reimbursement for dental expenses, hospital coverage, group major medical health insurance, life insurance, and long-term disability insurance. *Id.* The long term disability insurance referenced in the letter was provided by a combination of a group policy and an individual disability insurance contract. *Id.* at ¶¶ 1-3. Berkshire Life issued to Stauffer the individual disability policy. *Id.* at ¶ 1.

### B. Stauffer's Claim for Disability Benefits under the Policy

Stauffer claims that he became disabled from his job at Domain in October 2005 due to a number of medical conditions. The Cross-Claim, ¶ 26. He made a claim for benefits under the Policy ("the Claim"). Berkshire Life investigated the Claim and discovered that material information had been concealed in response to questions on the Application. Berkshire rescinded the Policy based on this and then filed a declaratory relief action in this Court under ERISA to confirm the rescission. Stauffer filed a counter-claim alleging common law claims for relief.

### C. The Domain Employee Welfare Benefit Plan

The Policy that was rescinded was a component of the Domain Plan. The Domain Plan included as its components a profit sharing plan, the reimbursement by Domain of dental expenses, hospital coverage, group major medical health insurance, life insurance, and long-term disability insurance. Kraeutler Decl., ¶¶ 1-2. Domain's employees were provided this insurance coverage as

a benefit of employment, and participation in the Domain Plan was not voluntary, as these benefits were part of the employment contract provided to Stauffer by Domain. *Id. at* ¶ 1 & Ex. A.

The long term disability insurance under the Domain Plan was provided by a combination group and individual policies. *Id.* at ¶ 1-2. The Policy issued by Berkshire Life to Stauffer provided the individual disability coverage to Stauffer. *Id.* Like Stauffer, all Domain employees received coverage under an individual disability policy. *Id.* at ¶¶ 2 & 3. It was Domain's intent to provide disability insurance coverage to its employees. *Id.* at ¶¶ 1-3 & Ex. A. Domain selected the combination of a group and an individual policy to provide coverage to each of its employees because Domain wanted to give the employees the option of maintaining the individual policies if they left their employment with Domain. Kraeutler Decl., ¶¶ 1-3.

In addition, Domain received the premium notices and paid the premium for all the insurance that was part of the Domain Plan, including the Policy issued by Berkshire Life to Stauffer. *Id.* at ¶ 4. Domain selected, through an insurance broker, the insurance companies who provided insurance coverage under the Domain Plan. *Id.* at ¶ 5. Domain provided employees the applications for the coverages *Id.* at ¶ 6. Domain informed insurance carriers if an individual's employee coverage status changed. *Id.* Depending on the question that an employee had regrading coverage, Domain might contact the appropriate insurance carrier. *Id.* at ¶ 7.

## IV. LEGAL ARGUMENT

### A. Determining That an ERISA Plan Exists is Appropriate on Summary Judgement

The Ninth Circuit has determined that the decision concerning the ERISA status for an employee benefit plan can be made as a matter of law. *Crull v. Gem Ins. Co.*, 58 F.3d 1386, 1390 (9th Cir. 1995); *Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 842 (9th Cir. 1994). The undisputed facts set forth in the Kraeutler declaration in this matter establish that the Domain Plan is governed by ERISA. As demonstrated below, as a matter of law, the Domain plan meets the statutory definition of an ERISA plan, meets the facts under *Donovan v. Dillingham, supra,* 688 F.2d at 1367, and does not come under the Safe Harbor Regulations.

**B. The Domain Plan Meets the Statutory Definition of an ERISA Plan.**

Under 29 USCS § 1002(1), an employee welfare benefit plan that is governed by ERISA is: " [a]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability. . ." *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 491-492 (9th Cir. 1988).

In applying this definition, the Domain Plan must be evaluated as a whole. *Stenson v. Jefferson Pilot Fin. Ins. Co.*, 2007 U.S. Dist. LEXIS 45067 *11 (E.D. Cal. 2007) ("Regardless, the contention that it is possible to divide ERISA plans into ERISA and non-ERISA portions has been universally rejected. Employee benefit programs are construed as a whole. *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 407 (9th Cir. 1994). ("We conclude that the American policy was just one component of Quivira's employee benefit program and that the program, taken as a whole, constitutes an ERISA plan.") Consistent with the definition of an employee welfare benefit plan under 29 U.S.C.S. § 1002(1), Domain established a plan, fund, or program, Stauffer participated in the Plan, and the Plan provided the benefits governed by ERISA.

**1. A Plan, Fund or Program Established or Maintained by Domain.**

According to the Ninth Circuit, "[a]n employer . . . can establish an ERISA plan rather easily. Even if an employer does no more than arrange for a 'group-type insurance program,' it can establish an ERISA plan, unless it is a mere advertiser who makes no contributions on behalf of its employees. 29 C.F.R. § 2510.3-1(j)." *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987); *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir. 1985) ("Although ERISA contains numerous requirements that a plan must adhere to -- a written instrument, named fiduciaries, public reports, etc. -- these requirements are not part of the definition of 'plan.'"); *Kanne v. Connecticut General Life Ins. Co., supra,* 867 F.2d at 492; *Stenson v. Jefferson Pilot Fin. Ins. Co., supra*, 2007 U.S. Dist. LEXIS 45067 *8 ("ERISA applies broadly to employee benefit plans that are established or maintained by an employer as defined in

29 U.S.C. § 1002(1). An employer can establish an ERISA plan if it does no more than arrange for a group type insurance program. Cite omitted.") A written instrument is not required. *Scott v. Gulf Oil Corp.*, *supra*, 754 F.2d at 1504. ("We agree with the Eleventh Circuit, however, that the existence of a written instrument is not a prerequisite to ERISA coverage.") The employer does not have to formally adopt a plan. *Carver v. Westinghouse Hanford Co.*, 951 F.2d 1083, 1086 (9th Cir. 1991).

Moreover, the purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan has been established. *Donovan v. Dillingham*, *supra,* 688 F.2d at 1373; *Evenson v. First Class Travel, Inc.*, 1990 U.S. Dist. LEXIS 7758 *7 (N.D. Cal. 1990 Patel) ("The Donovan court noted, as defendants properly point out, that 'decision to extend benefits is not the establishment of a plan or program.' *Donovan*, 688 F.2d at 1373. Likewise, 'the purchase of insurance does not conclusively establish a plan, fund, or program.' *Id.* However, the purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established. *Id.*' ")

It is undisputed that as a benefit of their employment, Stauffer and all the other employees of Domain received life and disability insurance, health and medical insurance, dental expense reimbursement, and a profit sharing plan under the Domain Plan. Kraeutler Decl., ¶¶ 1-2. Domain established the Domain Plan by selecting, through an insurance broker, the benefits to offer to its employees and by selecting the insurance companies to provide the insurance under the Domain Plan. *Id.* at ¶¶ 1-5. Domain established and maintained the Domain Plan by paying the premiums for the policies that provided the insurance under the Domain Plan, including the individual policy issued to Stauffer by Berkshire Life and individual disability polices issued to all the other employees of Domain. *Id.* at ¶ 4. This alone provides substantial evidence of the existence of an ERISA plan as it constitutes the purchase of multiple policies covering a class of employees. *Donovan v. Dillingham*, *supra,* 688 F.2d at 1373.

Moreover, it was Domain's intent to provide disability insurance to its employees as a benefit of their employment as these benefits were part of the employment contract offered to Stauffer and offered to all other employees. Kraeutler Decl., ¶¶ 1 & 2. Domain accomplished

this through the purchase of insurance which is consistent with the express definition of an ERISA Plan which provides that ERISA benefits can be provided "through the purchase of insurance or otherwise." 29 USCS § 1002(1). With the disability insurance, Domain selected a combination of a group policy and individual policies issued to the employees, including the individual policy issued to Stauffer by Berkshire Life, so that the employees could choose to keep the individual policy if they left their employment with Domain. Kraeutler Decl., ¶¶ 1-3.

Finally, Domain participated in the administration of the Domain Plan. Domain selected the insurers, provided the applications for the insurance to the employees, received the premium notices from the insurance companies, and paid the premiums under the policies that provided coverage to the employees. *Id.* at ¶¶ 4-7. Domain informed insurance carriers if an individual's employee coverage status changed. *Id.* at ¶ 6. Depending upon the question that an employee had regarding coverage, Domain might contact the appropriate insurance carrier. *Id.* These undisputed facts establish that Domain established and maintained a plan, fund, or program as a matter of law.

**2. The Participants and the Benefits**

The ERISA statute defines "participant" as: "Any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). Here, it is undisputed that the participants were the employees of Domain who received benefits under the Domain Plan, including Stauffer. Kraeutler Decl., ¶¶ 1-2. These benefits were life, health, and disability benefits, the exact benefits identified in the definition of an ERISA plan under 29 USCS § 1002(1). *Id.* at ¶ 1. It is undisputed that, under the definition stated in 29 USCS § 1002, Domain established an employee welfare benefit plan that is governed by ERISA and that the individual disability policy issued by Berkshire to Stauffer is part of this plan.

**C. The Donovan Factors.**

In addition to meeting the statutory requirements, the Domain Plan also meets the requirements stated in *Donovan v. Dillingham*, *supra*, 688 F.2d at 1373 ("*Donovan*"). According

to the court in *Donovan*, "[i]n determining whether a plan, fund or program (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." The Ninth Circuit has adopted the *Donovan* analysis. See *Scott v. Gulf Oil Corp*., *supra,* 754 F.2d at 1504; *Kanne v. Connecticut General Life Ins. Co.*, *supra,* 867 F.2d at 491-492; *Cinelli v. Security Pac. Corp*., 61 F.3d 1437, 1442 (9th Cir. 1995).

Under the *Donovan* analysis, the intended benefits provided by the Domain Plan include disability, life, and health insurance, a profit sharing plan, and reimbursement of dental expenses. Kraeutler Decl., ¶¶ 1-2. The beneficiaries are the employees of Domain, including Stauffer. *Id.* at ¶¶ 1-4. Domain intended to provide disability insurance to its employees through a combination of group and individual policies purchased by Domain. *Id.* at ¶¶ 1-3. The source of the financing was Domain as Domain paid the premium for all the insurance that was part of the Domain Plan. *Id.* at ¶ 4. This included paying the premium for the group and individual disability policies issued to the employees of Domain, including the individual disability policy issued to Stauffer by Berkshire Life. *Id.*

Finally, the procedure for receiving benefits was to have the employee submit a claim to the insurance company who issued the policy and the insurance company would determine whether benefits were payable. *Id.* at ¶ 7. This is the exact procedure followed by Stauffer when he claimed to be disabled from his job as an analyst at Domain. He submitted a claim for benefits to Berkshire and Berkshire handled the claim. The *Donovan* analysis confirms that this matter is governed by ERISA.

**D. Safe Harbor Provisions.**

It also is undisputed that the Domain Plan, including the Berkshire Life Policy issued to Stauffer, does not fall within the Safe Harbor regulations developed by the Department of Labor ("DOL"). Pursuant to its authority under 29 U.S.C. § 1135, the DOL has promulgated regulations designed to "clarify the definition of the terms 'employee welfare benefit plan' and 'welfare plan' [in ERISA] … by identifying certain practices which do not constitute employee welfare benefit

plans." 29 C.F.R. § 2510.3-1(a)(1). In CFR section 2510.3-1, subjection J, the DOL states the following which are commonly known as the Safe Harbor regulations:

> For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation the program is completely voluntary for employees or members;
>
> (3)   The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4)   The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). (emphasis added).

The Ninth Circuit, in *Stuart v. UNUM Life Ins. Co. of America*, 217 F.3d 1145, 1153 (9th Cir. 1999), made it clear that a plan must meet all four requirements specified in the Safe Harbor regulations to be excluded from ERISA:

> Thus, detailed review of our prior opinions demonstrates that we have uniformly adopted the position that a group insurance plan cannot be excluded from ERISA coverage when an employer fails to satisfy any one of the four requirements of the safe harbor regulation. See Steen, 106 F.3d at 917; Sarraf, 102 F.3d at 993; Crull, 58 F.3d at 1390; Pacificare, 34 F.3d at 837; Qualls, 22 F.3d at 844; Silvera, 884 F.2d at 426; Kanne, 867 F.2d at 492.

See also *Welch v. New York Life Ins. Co.*, 2001 U.S. Dist. LEXIS 16934 (N.D. Cal. 2001) ("An employer's failure to satisfy any one of the four safe harbor requirements conclusively establishes that the insurance policy cannot be excluded from ERISA coverage"); *Chamblin v. Reliance Std. Life Ins. Co.*, 168 F. Supp. 2d 1168, 1171 (N.D. Cal. 2001) ("To be exempt from ERISA, a plan must satisfy all four of the above prongs of the safe harbor provision.").

Stauffer cannot prove that the Domain Plan satisfies all four of the Safe Harbor regulations. The first element is that no contribution is made by the employer. Here, it is

undisputed that Domain paid the premium under all the insurance policies that were part of the Domain Plan, including the Berkshire Life Policy issued to Stauffer. Kraeutler Decl., ¶ 4.

Moreover, the Domain Plan is a benefit of employment that is automatically provided to each employee as part of their employment contract. *Id.* at ¶¶ 1-2 & Ex. A. Receipt of the employee benefits is not completely voluntary. Accordingly, Stauffer cannot establish the second element under the Safe Harbor regulations.

Finally, Stauffer cannot meet the third factor in the safe harbor regulations. Through an insurance broker, Domain selected the insurance carriers that provided the insurance to the employees. *Id. at* ¶ 5. It provided applications for the insurance when an employee was hired by Domain. *Id.* at ¶ 6. It received premium notices from the insurers and paid the premiums in response to those notices. *Id.* at ¶ 4. Domain informed insurance carriers if an individual's employee coverage status changed. *Id. at* ¶ 6. Domain might even contact a carrier directly depending on the question an employee had about coverage. *Id.* Domain did far more than simply permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues check-offs and to remit them to the insurer.

**E. This Matter Still is Governed by ERISA even though Domain Chose Individual Disability Policies.**

ERISA still applies even though individual policies constituted part of the insurance provided under the Domain Plan. Courts have long recognized that employee welfare benefit plans can be funded through the purchase of individual policies. See *Agrawal v. Paul Revere Life Ins. Co.*, 205 F.3d 297, 301 (6th Cir. 2000) ("Courts have recognized that an employee welfare benefit plan may be funded by group or individual policies"); *Massachusetts Casualty Ins. Co. v. Reynolds*, 113 F.3d 1450, 1453 (6th Cir. 1997) (acknowledging that an ERISA plan can consist of individual disability policies covering each of the employer's employees rather than a group policy); *Peterson v. American Life & Health Ins. Co., supra,* 48 F.3d at 407 (holding that an individual health insurance policy and a group policy together formed an ERISA plan); *Morris v. Paul Revere Ins. Group*, 986 F. Supp. 872 (D.N.J. 1997) (finding that individual disability policies constituted part of an ERISA plan). See also *Donovan v. Dillingham*, *supra*, 688 F.2d at

1373 ("the purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established."

In *Peterson v. American, supra*, 48 F.3d at 407 ("*Peterson*"), American Life contended that the individual health insurance policy that provided coverage only to Peterson was governed by ERISA. Peterson was a partner in Quivira Marine Service Center ("Quivira") and was the only partner or employee covered under the individual health insurance policy issued by American Life. Quivira continued to provide insurance to at least one non-partner employee, albeit not under the American policy. *Id.* at 407 & 408. Quivira not only paid its partners' and employees' insurance premiums but also played an active role in the administration of the coverage, including choosing the insurance, adding and deleting employees and partners from various policies, contacting insurance companies for employees and partners, and distributing information relevant to the coverage. In concluding that the individual health plan issued to Peterson was governed by ERISA, the Ninth Circuit held that:

> We conclude that the American policy was just one component of Quivira's employee benefit program and that the program, taken as a whole, constitutes an ERISA plan. Because the American policy was purchased by Quivira for the purpose of fulfilling its plan to provide benefits to its employees as well as its partners, the policy is part of an ERISA plan and is governed by ERISA.

*Id.* at 407.

The court in *Hollis v. Provident Life & Accident Ins. Co.*, 259 F.3d 410, 416 (5th Cir. 2001), discussing *Peterson*, concluded that:

> In *Peterson v. American Life and Health Ins. Co.*, the Ninth Circuit, relying on the plain language of ERISA's definition of beneficiary, held that an ERISA beneficiary includes "any person designated to receive benefits from a policy that is part of an ERISA plan." Peterson, 48 F.3d 404, 409 (9th Cir. 1995). The Peterson court reasoned that "to hold otherwise would create the anomaly of requiring some insureds to pursue benefit claims under state law while requiring others covered by the identical policy to proceed under ERISA." Id. The Peterson court noted that 'such a scenario would frustrate Congress's intent of achieving uniformity in the law governing employment benefits.' Id.

See also, *Sipma v. Mass. Cas. Ins. Co.*, 256 F.3d 1006 (10th Cir. 2001).

Like *Peterson*, the individual disability policy issued to Stauffer is a component of the Domain Plan. Like the employer in *Peterson*, the employer Domain provided insurance to the other employees and paid the premium for the coverages. Kraeutler Decl., ¶¶ 1-4. Like the employer in *Peterson*, Domain was active in the administration of the Domain Plan. This included selecting the insurance companies that provided the coverage, receiving premium notices, paying the premiums, advising insurers of the coverage status of employees, providing the applications to employees for the insurance, and contacting insurance companies with questions by employees regarding coverage. *Id.* at ¶¶ 6-7.

In fact, it is more apparent in this matter than it was in *Peterson* that this matter is governed by ERISA. The regulations implementing ERISA state that a plan under which no employees are participants does not constitute an ERISA employee benefit plan. 29 C.F.R. § 2510.3-3(b). Neither an owner of a business nor a partner in a partnership can constitute an "employee" for purposes of determining the existence of an ERISA plan. 29 C.F.R. § 2510.3-3(c)(1), (2). Peterson argued that, pursuant to these regulations, ERISA did not apply because he was a partner and the only person covered under the American policy. The court rejected this argument because "the American policy was just one component of Quivira's employee benefit program and that the program, taken as a whole, constitutes an ERISA plan." *Peterson*, supra at 407.

Here, it is even more certain that ERISA applies because this matter involves the purchase of insurance policies by Domain to a group of employees. Kraeutler Decl., ¶¶ 1-2. The individual policies, including the policy issued to Stauffer, were issued to employees. "The purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established." *Donovan v. Dillingham*, *supra*, 688 F.2d at 1373. The individual disability policy that was issued to Stauffer was a component of the Domain Plan and therefore is governed by ERISA.

**F. ERISA Preempts Stauffer's Common Law Claims for Relief in the Cross-Claim**

In his Cross-Claim, Stauffer alleges claims for relief for breach of contract, bad faith, misrepresentation, and infliction of emotional distress. The Cross Claim, Pars. 15-59. Each claim for relief is based on the alleged wrongful rescission of the Policy and the alleged wrongful denial of benefits under the Policy. As established above, the Policy is part of the Domain Plan and therefore governed by ERISA.

Since the Policy is governed by ERISA, each claim for relief in the Cross-Claim is preempted by ERISA and must be dismissed. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987). The Ninth Circuit, in *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1175, 1176 (9th Cir. 2004) held that:

> Indeed, "we have repeatedly emphasized that 'ERISA contains one of the broadest preemption clauses ever enacted by Congress.'" Security Life Ins. Co. of America v. Meyling, 146 F3d 1184, 1188 (9th Cir. 1998) (quoting Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1439 (9th Cir. 1990)). ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). Thus, in a variety of contexts, we have held that ERISA preempts state statutory and common law actions filed by plan participants against third party insurers of ERISA plans. See Elliot v. Fortis Benefits Ins. Co., 337 F.3d 1138 (9th Cir. 2003); Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003, 1008 (9th Cir. 1998); Greany v. Western Farm Bureau Life Ins. Co., 973 F.2d 812, 819 (9th Cir. 1992) Tingey v. Pixley-Richards West, Inc., 953 F.2d 1124, 1133 (9th Cir. 1992); Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 493-94 (9th Cir. 1988).

There is no question that Stauffer's common law claims for relief are preempted. Accordingly, Berkshire and Guardian are entitled to summary judgment on the common law claims for relief alleged in his Counter- Claim as each claim is preempted by ERISA.

Dated: March 5, 2008

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By /s/ Sean P. Nalty
SEAN P. NALTY
Attorneys for Plaintiff and Cross-Defendant
BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA and GUARDIAN LIFE INSURANCE COMPANY OF AMERICA