SEAN P. NALTY (SBN 121253)
**WILSON, ELSER, MOSKOWITZ,**
 **EDELMAN & DICKER LLP**
525 Market Street, 17th Floor
San Francisco, California 94105
Telephone:    (415) 433-0990
Facsimile:     (415) 434-1370

Attorneys for Plaintiff and Cross-Defendant
BERKSHIRE LIFE INSURANCE
COMPANY OF AMERICA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE OFFICE

| | |
|---|---|
| BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRANDON STAUFFER,<br><br>Defendant.<br><br>BRANDON STAUFFER,<br><br>Cross-Complainant,<br><br>vs.<br><br>BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA,<br><br>Cross-Defendant. | Case No.:  C 07-02622 RMW<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFF AND CROSS-DEFENDANTS' BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA AND CROSS-DEFENDANT GUARDIAN LIFE INSURANCE COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        May 9, 2008<br>Time:        9:00 a.m.<br>Courtroom:   6<br>Judge:       Hon. Ronald M. Whyte<br><br>Accompanying Documents:<br><br>1.   Notice of Motion and Motion<br>2.   Memorandum of Points and Authorities.<br>3.   Declaration of Lisa Kraeutler |

1    Plaintiff and cross-defendant Berkshire Life Insurance Company of America ("Berkshire

2    Life") and cross-defendant Guardian Life Insurance Company of America's ("Guardian")

3    (collectively "Berkshire") motion for summary judgment on defendant and cross-claimant

4    Brandon Stauffer ("Stauffer") counter claim came regularly for hearing in this matter on May 9,

5    2008 at 9:00 a.m.  Sean P. Nalty, Wilson, Elser, Moskowitz, Edelman & Dicker LLP appeared on

6    behalf of Berkshire.  Lawrence Mann, of Bourhis & Mann, appeared on behalf of Stauffer.  After

7    consideration of Berkshire's moving papers, Stauffer's opposition, and the oral argument

8    presented by counsel, the Court hereby **GRANTS** this motion.

**I.     PERTINENT FACTS**

**A.     Stauffer's Employment with Domain**

Stauffer was an employee of Domain.  Kraeutler Decl., ¶ 1.  He began working as an

analyst on September 15, 2001.  Stauffer signed the employment offer letter he received from

Domain, thus accepting and agreeing to the terms of the offer ("the offer letter").  *Id.* at ¶ 1 & Ex.

A.

The offer letter states the following:  "As an employee of Domain Associates, L.L.C. you

will be entitled to the following fringe benefits.  Coverage in all plans is subject to acceptance of

your applications by the various insurance companies."  Kraeutler Decl., ¶ 1 & Ex. A.  The offer

letter goes on to state that the fringe benefits include profit sharing, reimbursement for dental

expenses, hospital coverage,  group major medical health insurance, life insurance, and long-term

disability insurance.  *Id.*  The long term disability insurance referenced in the letter was provided

by a combination of a group policy and an individual disability insurance contract.  *Id.* at ¶¶ 1-3.

Berkshire Life issued to Stauffer the individual disability policy.  *Id.* at ¶ 1.

**B.     Stauffer's Claim for Disability Benefits under the Policy**

Stauffer claims that he became disabled from his job at Domain in October 2005 due to a

number of medical conditions.  The Cross-Claim, ¶ 26.  He made a claim for benefits under the

Policy ("the Claim").  Berkshire Life investigated the Claim and discovered what it believed to be

material information that had not been disclosed in response to questions on the Application.

Berkshire rescinded the Policy based on this and then filed a declaratory relief action in this Court

1  under ERISA to confirm the rescission.   Stauffer filed a counter-claim alleging common law

2  claims for relief.

3      **C.**    **The Domain Employee Welfare Benefit Plan**

4         The Policy that was rescinded was a component of the Domain Plan.  The Domain Plan

5  included as its components a profit sharing plan, the reimbursement by Domain of dental expenses,

6  hospital coverage, group major medical health insurance, life insurance, and long-term disability

7  insurance.  Kraeutler Decl., ¶¶ 1-2.  Domain's employees were provided this insurance coverage as

8  a benefit of employment, and participation in the Domain Plan was not voluntary, as these benefits

9  were part of the employment contract provided to Stauffer by Domain.  *Id. at* ¶ 1 & Ex. A.

10         The long term disability insurance under the Domain Plan was provided by a combination

11  group and individual policies.  *Id.* at ¶ 1-2.  The Policy issued by Berkshire Life to Stauffer

12  provided the individual disability coverage to Stauffer.  *Id.*  Like Stauffer, all Domain employees

13  received coverage under an individual disability policy.  *Id.* at ¶¶ 2 & 3.  It was Domain's intent to

14  provide disability insurance coverage to its employees.  *Id.* at ¶¶ 1-3 & Ex. A.  Domain selected

15  the combination of a group and an individual policy to provide coverage to each of its employees

16  because Domain wanted to give the employees the option of maintaining the individual policies if

17  they left their employment with Domain.  Kraeutler Decl., ¶¶ 1-3.

18         In addition, Domain received the premium notices and paid the premium for all the

19  insurance that was part of the Domain Plan, including the Policy issued by Berkshire Life to

20  Stauffer.  *Id.* at ¶ 4.  Domain selected, through an insurance broker, the insurance companies who

21  provided insurance coverage under the Domain Plan.  *Id.* at ¶ 5.  Domain provided employees the

22  applications for the coverages *Id.* at ¶ 6.  Domain informed insurance carriers if an individual's

23  employee coverage status changed.   *Id.*   Depending on the question that an employee had

24  regrading coverage, Domain might contact the appropriate insurance carrier.  *Id.* at ¶ 7.

25

26

27

28

327251.1

1

## II.    LEGAL ANALYSIS

2

### A.    Determining That an ERISA Plan Exists is Appropriate on Summary
Judgement

3

4        The Ninth Circuit has determined that the decision concerning the ERISA status for an

5    employee benefit plan can be made as a matter of law.  *Crull v. Gem Ins. Co.*, 58 F.3d 1386, 1390

6    (9th Cir. 1995); *Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 842 (9th Cir. 1994).  The

7    undisputed facts set forth in the Kraeutler declaration in this matter establish that the Domain Plan

8    is governed by ERISA.  As demonstrated below, as a matter of law, the Domain plan meets the

9    statutory definition of an ERISA plan, meets the facts under *Donovan v. Dillingham, supra,* 688

10    F.2d at 1367, and does not come under the Safe Harbor Regulations.

11        **B.    The Domain Plan Meets the Statutory Definition of an ERISA Plan.**

12        Under 29 USCS § 1002(1), an employee welfare benefit plan that is governed by ERISA is:

13    " [a]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an

14    employer or by an employee organization, or by both, to the extent that such plan, fund, or

15    program was established or is maintained for the purpose of providing for its participants or their

16    beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital

17    care or benefits, or benefits in the event of sickness, accident, disability. . ."  *Kanne v. Connecticut*

18    *General Life Ins. Co.*, 867 F.2d 489, 491-492 (9th Cir. 1988).

19        In applying this definition, the Domain Plan must be evaluated as a whole.  *Stenson v.*

20    *Jefferson Pilot Fin. Ins. Co.*, 2007 U.S. Dist. LEXIS 45067 *11 (E.D. Cal. 2007) ("Regardless, the

21    contention that it is possible to divide ERISA plans into ERISA and non-ERISA portions has been

22    universally rejected. Employee benefit programs are construed as a whole. *Peterson v. American*

23    *Life & Health Ins. Co.*, 48 F.3d 404, 407 (9th Cir. 1994).  ("We conclude that the American policy

24    was just one component of Quivira's employee benefit program and that the program, taken as a

25    whole, constitutes an ERISA plan.")  Consistent with the definition of an employee welfare benefit

26    plan under 29 U.S.C.S. § 1002(1), Domain established a plan, fund, or program, Stauffer

27    participated in the Plan, and the Plan provided the benefits governed by ERISA.

28

**PROPOSED ORDER        C 07-02622 RMW**

327251.1

1          **1.      A Plan, Fund or Program Established or Maintained by Domain.**

2          According to the Ninth Circuit, "[a]n employer . . . can establish an ERISA plan rather

3    easily. Even if an employer does no more than arrange for a 'group-type insurance program,' it

4    can establish an ERISA plan, unless it is a mere advertiser who makes no contributions on behalf

5    of its employees. 29 C.F.R. § 2510.3-1(j)." *Credit Managers Ass'n v. Kennesaw Life & Accident*

6    *Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987); *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir.

7    1985) ("Although ERISA contains numerous requirements that a plan must adhere to -- a written

8    instrument, named fiduciaries, public reports, etc. -- these requirements are not part of the

9    definition of 'plan.'"); *Kanne v. Connecticut General Life Ins. Co.*, *supra*, 867 F.2d at 492;

10   *Stenson v. Jefferson Pilot Fin. Ins. Co.*, *supra*, 2007 U.S. Dist. LEXIS 45067 *8 ("ERISA applies

11   broadly to employee benefit plans that are established or maintained by an employer as defined in

12   29 U.S.C. § 1002(1).  An employer can establish an ERISA plan if it does no more than arrange

13   for a group type insurance program. Cite omitted.")  A written instrument is not required. *Scott v.*

14   *Gulf Oil Corp.*, *supra*, 754 F.2d at 1504.  ("We agree with the Eleventh Circuit, however, that the

15   existence of a written instrument is not a prerequisite to ERISA coverage.")  The employer does

16   not have to formally adopt a plan. *Carver v. Westinghouse Hanford Co.*, 951 F.2d 1083, 1086 (9th

17   Cir. 1991).

18         Moreover, the purchase of a group policy or multiple policies covering a class of

19   employees offers substantial evidence that a plan has been established. *Donovan v. Dillingham*,

20   *supra*, 688 F.2d at 1373; *Evenson v. First Class Travel, Inc.*, 1990 U.S. Dist. LEXIS 7758 *7

21   (N.D. Cal. 1990 Patel)    ("The Donovan court noted, as defendants properly point out, that

22   'decision to extend benefits is not the establishment of a plan or program.' *Donovan*, 688 F.2d at

23   1373.  Likewise, 'the purchase of insurance does not conclusively establish a plan, fund, or

24   program.' *Id.*  However, the purchase of a group policy or multiple policies covering a class of

25   employees offers substantial evidence that a plan, fund, or program has been established. *Id.*' ")

26         It is undisputed that as a benefit of their employment, Stauffer and all the other employees

27   of Domain received life and disability insurance, health and medical insurance, dental expense

28   reimbursement, and a profit sharing plan under the Domain Plan.   Kraeutler Decl., ¶¶ 1-2.

---

1    Domain established the Domain Plan by selecting, through an insurance broker, the benefits to

2    offer to its employees and by selecting the insurance companies to provide the insurance under

3    the Domain Plan. *Id.* at ¶¶ 1-5. Domain established and maintained the Domain Plan by paying

4    the premiums for the policies that provided the insurance under the Domain Plan, including the

5    individual policy issued to Stauffer by Berkshire Life and individual disability polices issued to

6    all the other employees of Domain. *Id.* at ¶ 4. This alone provides substantial evidence of the

7    existence of an ERISA plan as it constitutes the purchase of multiple policies covering a class of

8    employees. *Donovan v. Dillingham, supra,* 688 F.2d at 1373.

9        Moreover, it was Domain's intent to provide disability insurance to its employees as a

10   benefit of their employment as these benefits were part of the employment contract offered to

11   Stauffer and offered to all other employees. Kraeutler Decl., ¶¶ 1 & 2. Domain accomplished

12   this through the purchase of insurance which is consistent with the express definition of an

13   ERISA Plan which provides that ERISA benefits can be provided "through the purchase of

14   insurance or otherwise." 29 USCS § 1002(1). With the disability insurance, Domain selected a

15   combination of a group policy and individual policies issued to the employees, including the

16   individual policy issued to Stauffer by Berkshire Life, so that the employees could choose to keep

17   the individual policy if they left their employment with Domain. Kraeutler Decl., ¶¶ 1-3.

18       Finally, Domain participated in the administration of the Domain Plan. Domain selected

19   the insurers, provided the applications for the insurance to the employees, received the premium

20   notices from the insurance companies, and paid the premiums under the policies that provided

21   coverage to the employees. *Id.* at ¶¶ 4-7. Domain informed insurance carriers if an individual's

22   employee coverage status changed. *Id.* at ¶ 6. Depending upon the question that an employee

23   had regarding coverage, Domain might contact the appropriate insurance carrier. *Id.* These

24   undisputed facts establish that Domain established and maintained a plan, fund, or program as a

25   matter of law.

26       **2.    The Participants and the Benefits**

27       The ERISA statute defines "participant" as: "Any employee or former employee of an

28   employer . . . who is or may become eligible to receive a benefit of any type from an employee

**PROPOSED ORDER**          C 07-02622 RMW

1     benefit plan which covers employees of such employer . . . whose beneficiaries may be eligible to

2     receive any such benefit." 29 U.S.C. § 1002(7). Here, it is undisputed that the participants were

3     the employees of Domain who received benefits under the Domain Plan, including Stauffer.

4     Kraeutler Decl., ¶¶ 1-2. These benefits were life, health, and disability benefits, the exact benefits

5     identified in the definition of an ERISA plan under 29 USCS § 1002(1). *Id.* at ¶ 1. It is

6     undisputed that, under the definition stated in 29 USCS § 1002, Domain established an employee

7     welfare benefit plan that is governed by ERISA and that the individual disability policy issued by

8     Berkshire to Stauffer is part of this plan.

9     **C.    The Donovan Factors.**

10     In addition to meeting the statutory requirements, the Domain Plan also meets the

11     requirements stated in *Donovan v. Dillingham, supra,* 688 F.2d at 1373 ("*Donovan*"). According

12     to the court in *Donovan,* "[i]n determining whether a plan, fund or program (pursuant to a writing

13     or not) is a reality a court must determine whether from the surrounding circumstances a

14     reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and

15     procedures for receiving benefits." The Ninth Circuit has adopted the *Donovan* analysis. See

16     *Scott v. Gulf Oil Corp., supra,* 754 F.2d at 1504; *Kanne v. Connecticut General Life Ins. Co.,*

17     *supra,* 867 F.2d at 491-492; *Cinelli v. Security Pac. Corp.,* 61 F.3d 1437, 1442 (9th Cir. 1995).

18     Under the *Donovan* analysis, the intended benefits provided by the Domain Plan include

19     disability, life, and health insurance, a profit sharing plan, and reimbursement of dental expenses.

20     Kraeutler Decl., ¶¶ 1-2. The beneficiaries are the employees of Domain, including Stauffer. *Id.*

21     at ¶¶ 1-4. Domain intended to provide disability insurance to its employees through a

22     combination of group and individual policies purchased by Domain. *Id.* at ¶¶ 1-3. The source of

23     the financing was Domain as Domain paid the premium for all the insurance that was part of the

24     Domain Plan. *Id.* at ¶ 4. This included paying the premium for the group and individual

25     disability policies issued to the employees of Domain, including the individual disability policy

26     issued to Stauffer by Berkshire Life. *Id.*

27     Finally, the procedure for receiving benefits was to have the employee submit a claim to

28     the insurance company who issued the policy and the insurance company would determine

vii
**PROPOSED ORDER**    C 07-02622 RMW

1  whether benefits were payable.  *Id.* at ¶ 7.  This is the exact procedure followed by Stauffer when

2  he claimed to be disabled from his job as an analyst at Domain.  He submitted a claim for benefits

3  to Berkshire and Berkshire handled the claim.  The *Donovan* analysis confirms that this matter is

4  governed by ERISA.

5      **D.**    **Safe Harbor Provisions.**

6        It also is undisputed that the Domain Plan, including the Berkshire Life Policy issued to

7  Stauffer, does not fall within the Safe Harbor regulations developed by the Department of Labor

8  ("DOL").  Pursuant to its authority under 29 U.S.C. § 1135, the DOL has promulgated regulations

9  designed to "clarify the definition of the terms 'employee welfare benefit plan' and 'welfare plan'

10  [in ERISA] ... by identifying certain practices which do not constitute employee welfare benefit

11  plans." 29 C.F.R. § 2510.3-1(a)(1).  In CFR section 2510.3-1, subjection J, the DOL states the

12  following which are commonly known as the Safe Harbor regulations:

13          For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or

14          group-type insurance program offered by an insurer to employees or members of an employee organization, under which

15

16          (1) No contributions are made by an employer or employee organization;

17          (2) Participation the program is completely voluntary for employees or members;

18          (3)    The sole functions of the employer or employee organization with

19          respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect

20          premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

21          (4)    The employer or employee organization receives no consideration

22          in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services

23          actually rendered in connection with payroll deductions or dues checkoffs.

24  29 C.F.R. § 2510.3-1(j). (emphasis added).

25        The Ninth Circuit, in *Stuart v. UNUM Life Ins. Co. of America*, 217 F.3d 1145, 1153 (9th

26  Cir. 1999), made it clear that a plan must meet all four requirements specified in the Safe Harbor

27  regulations to be excluded from ERISA:

28

1
2
3
4

Thus, detailed review of our prior opinions demonstrates that we have uniformly adopted the position that a group insurance plan cannot be excluded from ERISA coverage when an employer fails to satisfy any one of the four requirements of the safe harbor regulation. See Steen, 106 F.3d at 917; Sarraf, 102 F.3d at 993; Crull, 58 F.3d at 1390; Pacificare, 34 F.3d at 837; Qualls, 22 F.3d at 844; Silvera, 884 F.2d at 426; Kanne, 867 F.2d at 492.

5 See also *Welch v. New York Life Ins. Co.*, 2001 U.S. Dist. LEXIS 16934 (N.D. Cal. 2001) ("An
6 employer's failure to satisfy any one of the four safe harbor requirements conclusively establishes
7 that the insurance policy cannot be excluded from ERISA coverage"); *Chamblin v. Reliance Std.*
8 *Life Ins. Co.*, 168 F. Supp. 2d 1168, 1171 (N.D. Cal. 2001) ("To be exempt from ERISA, a plan
9 must satisfy all four of the above prongs of the safe harbor provision.").

10 Stauffer cannot prove that the Domain Plan satisfies all four of the Safe Harbor
11 regulations. The first element is that no contribution is made by the employer. Here, it is
12 undisputed that Domain paid the premium under all the insurance policies that were part of the
13 Domain Plan, including the Berkshire Life Policy issued to Stauffer. Kraeutler Decl., ¶ 4.

14 Moreover, the Domain Plan is a benefit of employment that is automatically provided to
15 each employee as part of their employment contract. *Id.* at ¶¶ 1-2 & Ex. A. Receipt of the
16 employee benefits is not completely voluntary. Accordingly, Stauffer cannot establish the second
17 element under the Safe Harbor regulations.

18 Finally, Stauffer cannot meet the third factor in the safe harbor regulations. Through an
19 insurance broker, Domain selected the insurance carriers that provided the insurance to the
20 employees. *Id.* at ¶ 5. It provided applications for the insurance when an employee was hired by
21 Domain. *Id.* at ¶ 6. It received premium notices from the insurers and paid the premiums in
22 response to those notices. *Id.* at ¶ 4. Domain informed insurance carriers if an individual's
23 employee coverage status changed. *Id.* at ¶ 6. Domain might even contact a carrier directly
24 depending on the question an employee had about coverage. *Id.* Domain did far more than
25 simply permit the insurer to publicize the program to employees or members, to collect premiums
26 through payroll deductions or dues check-offs and to remit them to the insurer.

27
28

**PROPOSED ORDER**          C 07-02622 RMW

327251.1

**F.    ERISA Preempts Stauffer's Common Law Claims for Relief in the Cross-Claim**

In his Cross-Claim, Stauffer alleges claims for relief for breach of contract, bad faith, misrepresentation, and infliction of emotional distress. The Cross Claim, Pars. 15-59. Each claim for relief is based on the alleged wrongful rescission of the Policy and the alleged wrongful denial of benefits under the Policy. As established above, the Policy is part of the Domain Plan and therefore governed by ERISA.

Since the Policy is governed by ERISA, each claim for relief in the Cross-Claim is preempted by ERISA and must be dismissed. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987). The Ninth Circuit, in *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1175, 1176 (9th Cir. 2004) held that:

> Indeed, "we have repeatedly emphasized that 'ERISA contains one of the broadest preemption clauses ever enacted by Congress.'" Security Life Ins. Co. of America v. Meyling, 146 F3d 1184, 1188 (9th Cir. 1998) (quoting Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1439 (9th Cir. 1990)). ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). Thus, in a variety of contexts, we have held that ERISA preempts state statutory and common law actions filed by plan participants against third party insurers of ERISA plans. See Elliot v. Fortis Benefits Ins. Co., 337 F.3d 1138 (9th Cir. 2003); Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003, 1008 (9th Cir. 1998); Greany v. Western Farm Bureau Life Ins. Co., 973 F.2d 812, 819 (9th Cir. 1992) Tingey v. Pixley-Richards West, Inc., 953 F.2d 1124, 1133 (9th Cir. 1992); Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 493-94 (9th Cir. 1988).

Stauffer's common law claims for relief are preempted by ERISA. Accordingly, the Court grants Berkshire and Guardian's motion for summary judgment on Stauffer's counter-claim.

**IT IS SO ORDERED.**

Dated: _____

_____

RONALD M. WHYTE
JUDGE OF THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA