1  Ray Bourhis, Esq., SBN 53196
Lawrence Mann, Esq. SBN, 83698
2  Bennett M. Cohen, Esq., SBN 98065
3  **BOURHIS & MANN**
1050 Battery Street
4  San Francisco, CA 94111
Tel: (415) 392-4660
5  Fax: (415) 421-0259

6
Attorneys for Cross-Complainant BRANDON STAUFFER
7

8

9            UNITED STATES DISTRICT COURT

10          NORTHERN DISTRICT OF CALIFORNIA

11                SAN JOSE BRANCH

| | |
|---|---|
| 12  BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA. | Case No.: C 07-02622 RMW |
| 13  Plaintiff,<br>14  v.<br>15  BRANDON STAUFFER,<br>16  Defendant.<br>17<br>18  BRANDON STAUFFER,<br>19  Cross-Complainant,<br>20  v. .<br>21  BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, THE<br>22  GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, THE<br>23  BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA DISABILITY<br>24  INCOME PLAN, and DOES 1-50,<br>26  Cross-Defendants. | FIRST AMENDED CROSS-CLAIM FOR BENEFITS DUE TO CROSS-COMPLAINANT UNDER THE PLAN, FOR ENFORCEMENT OF CROSS-COMPLAINANT'S RIGHTS UNDER THE PLAN, FOR CLARIFICATION OF CROSS-COMPLAINANT'S RIGHTS TO FUTURE BENEFITS AND FOR COSTS AND ATTORNEYS FEES<br>(29 U.S.C. Section 1332)<br><br>REQUEST FOR JURY TRIAL |

27

28

Case No.: C 07-02622 RMW
FIRST AMENDED CROSS-CLAIM FOR BENEFITS DUE TO CROSS-COMPLAINANT UNDER THE PLAN, FOR ENFORCEMENT OF CROSS-COMPLAINANT'S RIGHTS UNDER THE PLAN, FOR CLARIFICATION OF CROSS-COMPLAINANT'S RIGHTS TO FUTURE BENEFITS AND FOR COSTS AND ATTORNEYS FEES (29 U.S.C. Section 1332); REQUEST FOR JURY TRIAL

1  COMES NOW, Cross-Complainant BRANDON STAUFFER (hereafter "Cross-
2  Complainant") and alleges as follows:
3  Cross-Complainant hereby requests a jury trial on all issues in this
4  action.

I.
**JURISDICTIONAL ALLEGATION**

1. This cross complaint arises under the Employee's Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1001 et seq; under 29 U.S.C. Sec. 1332(e), the District Court has jurisdiction to hear and adjudicate the case.

II.
**BACKGROUND**

2. Cross-Complainant is and at all relevant times was a resident of the State of California.

3. Cross-Defendant BERSKHIRE LIFE INSURANCE COMPANY OF AMERICA INSURANCE COMPANY OF AMERICA (hereinafter "BERKSHIRE") was a corporation duly organized and existing under and by virtue of the laws of the State of Massachusetts and engaged in the business of insurance in the State of California.

4. Cross-Defendant THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA OF AMERICA, (hereinafter "GUARDIAN") is a corporation duly organized and existing under and by virtue of the laws of the State of New York and engaged in the business of insurance in the State of California.

5. On July 1, 2001, BERKSHIRE and GUARDIAN entered into an agreement whereby they merged into one entity; in the alternative, on information and belief,

2

BERKSHIRE and GUARDIAN combined such that one became the subsidiary of the other; at all times herein mentioned, BERKSHIRE and GUARDIAN, and each of them, were and continued to be the PLAN administrator(s) and claims administrator(s) for the particular PLAN described below under which Cross Complainant is insured and entitled to insurance benefits; alternatively, on information and belief, the PLAN does not designate a PLAN administrator and, notwithstanding this lack of designation, BERKSHIRE and GUARDIAN, and each of them, have acted and continue to act as the PLAN administrator(s) and claims administrator(s).

6. Cross-Complainant alleges that the corporate headquarters of BERKSHIRE is at 700 South Street, Pittsfield, Massachusetts.

7. Cross-Defendant THE BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA DISABILITY INCOME PLAN ("PLAN"), and/or the plan commonly known as THE BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA DISABILITY INCOME PLAN and more particularly designed policy number PLAN No. 20848080 is the ERISA plan under which Cross-Complainant is insured and entitled to disability benefits. (The PLAN is attached hereto as Exhibit A).

8. Cross-Complainant alleges that BERKSHIRE, as PLAN and claims administrator of Cross-Complainant's claim for disability benefits, made the decision to deny Cross-Complainant's claim and to attempt to rescind the PLAN.

9. Cross-Complainant alleges that BERKSHIRE adopted and implemented GUARDIAN's unfair claims handling practices and has utilized those unfair claims handling practices in its role as PLAN administrator and as claims administrator for

3

1  GUARDIAN's individual disability income policies.

2      10. Cross-Complainant alleges that Cross-Defendants, and each of them,

3  continue to be, responsible to pay benefits under Cross-Complainant's PLAN.

4  GUARDIAN and BERKSHIRE have this responsibility because they issued the PLAN.

5  Cross-Complainant is informed and believes and on that basis alleges that Cross-

6  Defendant BERKSHIRE assumed this obligation from Cross-Defendant GUARDIAN by

7  way of assignment or otherwise. Cross-Defendant BERKSHIRE also accepted and

8  assumed the obligation to pay Cross-Complainant's insurance claim and to administer it

9  on Cross-Complainant's behalf and for his benefit.

10

11      11. In the alternative, on information and belief, Cross-Complainant alleges that

12  he is a third-party beneficiary of the agreement between BERKSHIRE and GUARDIAN.

13      12. The true names or capacities, whether individual, corporate, associate, or

14  otherwise, of Cross-Defendants DOES 1 through 50, inclusive, are unknown to Cross-

15  Complainant who therefore sues said Cross-Defendants by such fictitious names.

16  Cross-Complainant is informed and believes and on such information and belief alleges

17  that each of the Cross-Defendants sued herein as a DOE is legally responsible in some

18  manner for the events and happenings referred to herein, and will ask leave of this court

19  to amend this complaint to insert their true names and capacities in place and instead of

20  the fictitious names when the same become known to Cross-Complainant.

21

22  ///

23  ///

24  ///

Case No.: C 07-02622 RMW
FIRST AMENDED CROSS-CLAIM FOR BENEFITS DUE TO CROSS-COMPLAINANT UNDER THE PLAN, FOR ENFORCEMENT
OF CROSS-COMPLAINANT'S RIGHTS UNDER THE PLAN, FOR CLARIFICATION OF CROSS-COMPLAINANT'S RIGHTS TO
FUTURE BENEFITS AND FOR COSTS AND ATTORNEYS FEES (29 U.S.C. Section 1332); REQUEST FOR JURY TRIAL

### III.
### FIRST CAUSE OF ACTION FOR BENEFITS DUE TO CROSS-COMPLAINANT UNDER THE PLAN, FOR ENFORCEMENT OF CROSS-COMPLAINANT'S RIGHTS UNDER THE PLAN AND FOR CLARIFICATION OF CROSS-COMPLAINANT'S RIGHTS TO FUTURE BENEFITS AGAINST CROSS-DEFENDANTS GUARDIAN, BERKSHIRE, THE PLAN and DOES 1 - 10

As and for a FIRST CAUSE OF ACTION, Cross-Complainant complains against Cross-Defendants GUARDIAN, BERKSHIRE, the PLAN and DOES 1 - 10 and alleges:

13. Cross-Complainant incorporates by reference each and every paragraph of the complaint as though fully set forth in this cause of action.

14. On or about September 15, 2005, Cross-Complainant purchased the PLAN from Cross-Defendants.

15. The PLAN defines "Your Occupation" as "the regular occupation (or occupations, if more than one) in which you are engaged at the time you become disabled." (See Exh. A, p. A) Total disability is defined in the PLAN as: "because of sickness or injury, you are not able to perform the material and substantial duties of your occupation." (See Exh. A, p. 4) The PLAN states that "you will be totally disabled even if you are at work in some other capacity as long as you are not able to work in your occupation." (See Exh. A, p. 4) The PLAN is non-cancelable and guarantees benefits to age 65 under this definition if the "disability begins before age 60." (See Exh. A, Schedule p. 2.)

16. The PLAN contains a Cost of Living Adjustment ("COLA") Rider. Cross-Complainant paid extra in monthly premiums for this rider.

17. At all times relevant, Cross-Complainant's occupation was that of a Venture Capitalist.

18. On or about October, 2005, Cross-Complainant became disabled by reason of medical conditions including but not limited to chronic inflammatory demyelinating polyneuropathy (CIDP) from performing his occupation as a Venture Capitalist. As a result of said illnesses, under the PLAN as governed by applicable law, Cross-Complainant is disabled and entitled to disability benefits.

19. At all of said times thereafter, Cross-Complainant has remained, and continues to remain, disabled and eligible to receive disability insurance benefits payable under the PLAN. Cross-Complainant will be totally disabled at least through age 65.

20. Cross-Complainant applied for disability benefits under his PLAN on the basis of his CIDP.

21. Within the times prescribed by the PLAN, Cross-Complainant duly presented the necessary notices of claim and proofs of loss and evidence supporting the claim of disability; Cross-Complainant has performed any and all other conditions required of him under the terms and provisions of the PLAN to receive, secure and obtain benefits.

22. Cross-Complainant has exhausted any and all administrative remedies provided by Cross-Defendants prior to filing suit. To the extent the PLAN may now claim that Cross-Complainant has failed to exhaust administrative remedies, "exhaustion" of administrative remedies is not required as a condition precedent for filing suit for the following reasons: Cross-Defendants failed to give proper notice to Cross-Complainant of the availability of such remedies in the manner required by ERISA and the regulations promulgated there under including, but not limited to 29 CFR

Case No.: C 07-02622 RMW
FIRST AMENDED CROSS-CLAIM FOR BENEFITS DUE TO CROSS-COMPLAINANT UNDER THE PLAN, FOR ENFORCEMENT OF CROSS-COMPLAINANT'S RIGHTS UNDER THE PLAN, FOR CLARIFICATION OF CROSS-COMPLAINANT'S RIGHTS TO FUTURE BENEFITS AND FOR COSTS AND ATTORNEYS FEES (29 U.S.C. Section 1332); REQUEST FOR JURY TRIAL

2560.603-1(f); Cross-Defendants have failed to comply with their obligations under ERISA to adequately set forth the reasons for the denial of the claim; this case is cognizable in the first instance by a court; Cross-Defendants delayed an unreasonably long time in reviewing Cross-Complainant's claim and any and all requests for further review and any and all appeals of the PLAN's claims decisions; the administrative remedies which Cross-Defendants may claim exist, in fact, do not exist or are inadequate, and, further, any administrative remedies purportedly provided by the PLAN do not exist or are inadequate; the administrative remedies provided by the PLAN are, and at all times would have been, futile to pursue.

23. On or about November, 2005, Cross-Defendants began paying disability benefits to Cross-Complainant pursuant to the PLAN. Cross-Complainant regularly supplied Cross- Defendants with ongoing reports from his treating physicians who had examined him and found him totally disabled from him occupation, and did everything else required of him by the PLAN.

24. Pursuant to Cross-Defendants' own unfair claims handling practices deliberately developed to increase profits by reducing overall claims payments, Cross-Defendants developed a plan to terminate Cross-Complainant's benefits. This plan included, but was not limited to, the use of a biased review of Cross-Complainant's medical records that could be used as a pretext to deny Cross-Complainant's claim.

25. Relying upon their biased investigation and/or on purported evidence  and/or other matters which do not properly support a rescission of the PLAN or the termination of benefits, Cross-Defendants informed Cross-Complainant on or about January 17,

Case No.: C 07-02622 RMW
FIRST AMENDED CROSS-CLAIM FOR BENEFITS DUE TO CROSS-COMPLAINANT UNDER THE PLAN, FOR ENFORCEMENT OF CROSS-COMPLAINANT'S RIGHTS UNDER THE PLAN, FOR CLARIFICATION OF CROSS-COMPLAINANT'S RIGHTS TO FUTURE BENEFITS AND FOR COSTS AND ATTORNEYS FEES (29 U.S.C. Section 1332); REQUEST FOR JURY TRIAL

1  2007 that no further benefits would be paid and asserted that they were rescinding the

2  PLAN.

3      26. Cross-Defendants assertion that they were rescinding the PLAN and its

4  aforesaid failures and refusals to continue to pay benefits are contrary to the terms of

5

6  the PLAN as governed by applicable law and are wrongful and, additionally, are

7  arbitrary and capricious; under the terms of the PLAN and applicable law, all of the

8  Cross-Complainant is covered under the PLAN and benefits are properly payable.

9      27. Cross-Defendants' conduct forced Cross-Complainant to retain counsel and

10

11  become obligated to pay attorneys' fees and costs to obtain the benefits to which he is

12  contractually entitled, to enforce his rights under the PLAN and to obtain clarification of

13  his right to future benefits.

14      28.  By reason of the premises, Cross Complainant has incurred damages as

15  and for the amount of the disability benefits withheld, the interest accrued on the

16

17  withheld benefits, as well as for costs and reasonable attorneys fees and interest

18  continuing to accrue.

19      WHEREFORE, Cross-Complainant prays judgment against Cross-Defendants,

20  and each of them, as hereinafter set forth.

21

22                              **VI.**
                        **PRAYER FOR RELIEF**

23

24      WHEREFORE, Cross-Complainant prays for relief as follows:

25      1)    The payment of the benefits to the extent that they remain unpaid (29

26            U.S.C. Sec.1132(a)(1)(B));

27

28                                8

2)  For enforcement of his rights under the PLAN including but not limited to the payment of benefits (29 U.S.C. Sec. 1132(a)(1)(B));

3)  An order and judgment clarifying Plaintiff's rights to future benefits, including the payment of benefits uninterrupted to the maximum amount and final date through which benefits are due under the PLAN (29 U.S.C. Sec. 1132(a)(1)(B));

4)  Costs of asserting the claim and costs of suit herein incurred (29 U.C.S. Sec. 1132 (g));

5)  For reasonable attorneys' fees according to proof (29 U.C.S. Sec. 1132 (g));

6)  Interest assessed on all unpaid or delayed benefits (29 U.C.S. Sec. 1132 (g));

7)  Pre- and Post-judgment interest as allowed by law (29 U.C.S. Sec. 1132 (g));

8)  For further and other relief, legal or equitable, as this Court deems just and proper.

///
///
///
///
///
///

9

Case No.: C 07-02622 RMW
FIRST AMENDED CROSS-CLAIM FOR BENEFITS DUE TO CROSS-COMPLAINANT UNDER THE PLAN, FOR ENFORCEMENT OF CROSS-COMPLAINANT'S RIGHTS UNDER THE PLAN, FOR CLARIFICATION OF CROSS-COMPLAINANT'S RIGHTS TO FUTURE BENEFITS AND FOR COSTS AND ATTORNEYS FEES (29 U.S.C. Section 1332); REQUEST FOR JURY TRIAL

**DEMAND FOR JURY TRIAL**

Plaintiff herewith demands a jury trial on all issues.

Dated: May 5, 2008

Respectfully submitted,

**BOURHIS & MANN**

By: *Bennett M Cohen*

Ray Bourhis, Esq.
Lawrence Mann, Esq.
Bennett M. Cohen, Esq.
Attorneys for BRANDON STAUFFER

10

**Berkshire Life Insurance Company of America**
700 South Street • Pittsfield, Massachusetts 01201
413-499-4321

This policy is issued by
Berkshire Life Insurance Company of America, a subsidiary
of the Guardian Life Insurance Company of America, NY, NY

Berkshire Life hereby furnishes insurance to the extent set
out in this policy. All of the provisions on this and pages
which follow are part of this policy.

| | |
|---|---|
| Secretary | President |
| Berkshire Life Insurance Company | Berkshire Life Insurance Company |
| of America | of America |

*You* and *your* mean the person insured.
*We, us, our,* and *Berkshire Life* mean the
Berkshire Life Insurance Company of America.

## NONCANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65

You may renew this policy at the end of each term until you are age 65. During that time, we cannot change the premium or cancel this policy.

## CONDITIONAL RIGHT TO RENEW AFTER AGE 65—
## PREMIUMS CAN CHANGE

After you are age 65, you may renew this policy at the end of each term as long as you are at work full time. There is no age limit. But you must be at work at least thirty hours each week for at least ten months each year.

Your premium will be at our rates then in effect for persons of your age and class of risk. We have the right to change such premiums on a class basis on any policy anniversary.

## NOTICE OF TEN DAY RIGHT TO REVIEW POLICY

You have ten days to review this policy from the date you receive it. Within that time, you can deliver or mail it to our home office or to any authorized agent or agency for a prompt refund of all premiums. This policy will then be void from the start.

### Disability Income Policy
#### Non-Participating

EXHIBIT "A"

1100-G NJ (06/01)

Berkshire Life Insurance Company of America is a subsidiary of
The Guardian Life Insurance Company of America, NY, NY.

GUARDIAN

MP8

INSUREO- BRANDON E STAUFfER                          POLICY NUMBER- z0848080

OWNER- BRANDON E STAUFFER                             DATE OF ISSUE- 10/01/2005

LOSS PAYEE- BRANDON E STAUFfER                        LAST CHANGE DATE- 10/01/2005

                                                      TERM- 12 MONTHS

OCCUPATION CLASS- 4          DATE OF BIRTH- 10/18/1979          AGE AT ISSUE-   25

PREMIUM DISCOUNT CLASS- NON-TOBACCO USER


ANNUAL PREMIUM FOR:
  - BASIC BENEFITS                                    $2.682.85
  - RESIDUAL DISABILITY RIDER (FORM NO. 1102)         $404.60

                              TOTAL ANNUAL PREMIUM* -          $3,087.45
                                    TERM PREMIUM -             $3,08].45


               ELIMINATION AND ACCUMULATION PERIODS ---

ELIMINATION PERIOD-  2 MONTHS          ACCUMULATION PERIOD- 5 MONTHS

*MODAL PREMIUMS (FIRST YEAR) :

 FIRST YEAR ANNUAL PREMIUM IS $3,087.45. THIS INCLUDES A $30.00 POLICY FEE.

      -IF YOU CHOSE A SEMI-ANNUAL PREMIUM YOU WILL PAY $1,590.04 EVERY 6 MONTHS.
      THIS MEANS YOU ARE PAYING AN ADDITIONAL $92.63 OR 3.00% PER YEAR, OR A
      TOTAL ANNUALIZED PREMIUM OF $3,180.08.
      , -IF YOU CHOSE A QUARTERLY PREMIUM YOU WILL PAY $810.92 EVERY 3 MONTHS.
      THIS MEANS YOU ARE PAYING AN ADDITIONAL $156.23 OR 5.06% PER VEAR. OR A
      TOTAL ANNUALIZED PREMIUM OF $3,243.68.
      -IF YOU CHOSE A MONTHLY PREMIUM YOU WILL PAY $265.01 EVERY MONTH. THIS
      MEANS YOU ARE PAYING AN ADDITIONAL $92.67 OR 3.00% PER YEAR, OR A
      TOTAL ANNUALIZED PREMIUM OF $3,180.12.
      -IF YOU CHOSE AN AUTOMATIC PAYMENT PLAN YOU WILL PAY $265.01 EVERY MONTH.
      THIS MEANS YOU ARE PAYING AN ADDITIONAL $92.67 OR 3.00% PER YEAR, OR A
      TOTAL ANNUALIZED PREMIUM OF $3,180.12.

THE ADDITIONAL CHARGE THAT IS ADDED FOR PAYING IN INSTALLMENTS WILL REMAIN THE
SAME FOR THE LIFE OF THE POLICY. ' PREMIUMS DO NOT REFLECT AUTOMATIC INCREASE
RIDER PREMIUMS.  MODAL PREMIUMS DO NOT REFL:ECT ALL DISCOUNTS YOU MAY QUALIFY FOR.

POLICY NUMBER: zo848oBo

## BENEFIT PERIOD

```
TO AGE 65  IF  DISABILITY  BEGINS  6EFORE AGE 60
60 MONTHS  IF  DISABILITY  BEGINS  AT OR AFTER AGE 60 BUT BEFORE AGE 61
48 MONTHS  IF  DISABILITY  BEGINS  AT OR AFTER AGE 61 BUT BEFORE AGE 62
42 MONTHS  IF  DISABILITY  BEGINS  AT OR AFTER AGE 62 BUT BEFORE AGE 63
36 MONTHS  IF  DISABILITY  BEGINS  AT OR AFTER AGE 63 BUT BEFORE AGE 64
30 MONTHS  IF  DISABILITY  BEGINS  AT OR AFTER AGE 64 BUT BEFORE AGE 65
24 MONTHS  IF  DISABILITY  BEGINS  AT OR AFTER AGE 65 BUT BEFORE AGE 75
12 MONTHS  IF  DISABILITY  BEGINS  AT OR AFTER AGE 75
```

POLICY NUMBER - zo84Bo80

--- TABLE OF BASIC BENEFITS ---

- MONTHLY  INDEMNITY                                        $4,250
- CAPITAL  SUM                                            $51,000

--- TABLE OF OPTIONAL BENEFITS ---

THE RENEWAL PROVISION OF EACH OPTIONAL RIDER MAY DIFFER FROM THAT OF THIS POLICY.    SEE  EACH  RIDER  FOR  DETAILS.

- RES IDUAL  OISAB ILITV  (FORM 'NO" 1102)

--- BENEFITS  AND  PREMIUMS  AFTER  AGE  65 ---

IF  YOU  RENEW  THIS  POLICY  WHEN  YOU  ARE  AGE  65,  WE  WILL  ISSUE  A NEW  SCHEDULE PAGE  AT  THAT  TIME.    BENEFITS  WILL  BE  LIMITED  TO  THOSE  SHOWN  IN  THE  TABLE  OF BASIC  BENEFITS  ABOVE.            .

PREMIUMS  FOR  THIS  POLICY  MAY  INCREASE  ON  RENEWAL  AT  OR  AFTER  AGE  65  AND  WILL BE  AT  OUR'RATES  THEN  IN  EFFECT  FOR  PERSONS  OF  YOUR  AGE  AND  CLASS  OF  RISK.

LICENSED  RESIDENT  AGENT'S  COUNTERSIGNATURE

_____

(IN  STATES  WHERE  REQUIRED)

SCHEDULE PAGE  3

This policy is a legal contract between
**you and Serkshire** Life. **READ IT WITH CARE.**

# INDEX

The major provisions of **this** policy appear on the following pages:

| | |
|---|---|
| Renewal Provisions | Pages', 7 and 8 |
| Exclusions and Limitations | Page 3 |
| Definitions | Pages 3 and 4 |
| Benefit Provisions | Pages 4, 5 and 6 |
| Claim Provisions· | Pages 6 and 7 |
| General Provisions | Page 9 |

Accumulation Period ........................................................... 3
Age ...................................................................................... 7
Benefit Period .................................................................... 3
Capital Sum Benefit ........................................................... 5
Consideration ...................................................................... 9
Effective Date .................................................................... 9
Elimination Period .............................................................. 3
Entire Contract ................................................................... 9
Grace Period ....................................................................... 7
Injury .................................................................................. 3
Incontestable ...................................................................... 9
Legal Actions ...................................................................... 7
Medical Care Requirement ................................................. 4
Military Suspension ............................................................ 8
Misstatement of Age .......................................................... 7
Monthly Indemnity ............................................................. 3
Notice of Claim .................................................................. 6
Payment of Claims ............................................................. 7
Policy Anniversary ............................................................. 7
Presumptive Total Disabil;ty ............................................. 5
Recurrent Disability ........................................................... 5
Rehabilitation Benefit ......................................................... 5
Reinstatement ..................................................................... 8
Sickness .............................................................................. 4
Termination ......................................................................... 8
Total Disability Benefit ...................................................... 4
Total Disability Defined ..................................................... 4
Transplant and Cosmetic Surgery ...................................... 6
Waiver of Premium Benefit ................................................ 6

Additional benefits, if any, **are** shown in **the** schedule page
and are described in the *rider* forms attached to this policy.

**If you have questions about your policy,**
you **may** call Berkshire Life at 1-800-819-2468 or 413-499-4321.

EXCLUSIONS AND LIMITATIONS

**Normal** Pregnancy Limitation
We will not **pay** benefits for normal pregnancy or Childbirth during the first 3 months of total disability or, the elimination period, if longer.'

**Foreign** Residency Limitation
We will not pay benefits for more than twelve months during the lifetime of this policy when you are not a resident of the United States or Canada.

Preexisting Condition Limitation
We will not cover any loss that begins in the first two years after the date of issue **from** a preexisting condition,

A *preexisting* condition means a physical or mental condition:
* which was misrepresented or not disclosed in your application; and
* for which you received a physician's advice or treatment within two years before the date of ;ssue; or
* Which caused symptoms within one year before the date of issue for which a prudent person would usually seek medical advice or treatment.

DEFINITIONS

**Accumulation** Period
The accumulation period is shown in the schedule page. It is a period of consecutive months that begins on the first day that you are disabled and during which the elimination period must be satisfied.

**Benefit** Period
The benefit period is shown in the schedule page. It is the longest period of time for which we will. pay indemnity for continuous disablhty from the same cause.

**Elimination** Period
The elimination period is shown in the schedule page. It is the number of months for which we will10t pay benefits at the start of a claim. You must be disabled, from the same cause or a different cause for this entire period. The days within this period need not be consecutive but they must occur within the accumulation period. Each month of continuous disability will be calculated from the date disabi'lity began to the same date in each subsequent month. For periods of disability that are less than one month, we will consider each day of disability to be *1/30* of a"month.

Injury
Injury means accidental **bodily** injury which occurs while this policy is in force.

Loss Payee
The insured is the loss payee unless some other person is named in the schedule page. The loss payee is designated by the owner of the policy, who may be the insured or some other person named as owner on the schedule page. We will **pay** all benefits to the loss payee.

Monthly Indemnity
T.he **monthly** indemnity is shown in the sChedule page. It is the amount we will pay for each month of total dIsability.

**Owner**
You are the owner unless some other person is named in the schedule page. The owner has the right to renew this policy; to request a change in benefits; and to change the loss payee.

**Physician**
Physician means a legally qualified physician or surgeon other than the insured who is acting within the scope of his or her license.

**Sickness**
Sickness means a sickness or disease which is diagnosed and treated while this policy is in force.

**Total Disability**
Total disability means that, because of sickness or injury, you are not able to perform the material and substantial duties of your occupation. Your occupation means the regular occupation (or occupations, jf more than one) in which you are engaged at the time you become disabled.

You will be totally disabled even if you are at work in some other capacity so long as you are not able to work in your occupation.

If your occupation is limited to a single medical specialty certified by the American Board of Medical Specialties or a single dental specialty recognized by the American Dental Association, we will deem your specialty to be your occupation.

BENEFIT PROVISIONS

**Total Disability Benefit**
When you are totally disabled we will pay the monthly indemnity as follows:
- You must become totally disabled while this policy is in force.
- You must remain so disabled for the length of the elimination period. No indemnity is payable during that period.
- After that, monthly indemnity will be payable at the end of each month while you are totally disabled.
- Monthly indemnity will slop at the end of the benefit period or, if earlier, on the date you are no longer totally disabled.

We will not increase the rate of monthly indemnity because you are totally disabled from more than one cause at the same time.

**Medical Care Requirement**
We will not pay benefits under this policy for any period of disability during which you are not under the care of a physician. Such care must be appropriate, according to generally accepted medical standards, for the condition which is causing the disability, and must be provided by a physician whose specialty is appropriate for your sickness or injury.

We will waive the medical care requirement during any claim under this policy upon reasonable proof that your sickness or injury no longer requires the regular care of a physician under prevailing medical standardS. Such. waiver will not restrict our rights under the provision of this policy called "Physical examinations."

**Fractional Month**
We will pay benefits at the rate of *1/30* of the monthly indemnity for each day for which we are liable when you are disabled for less than a full month.

Wahler of Elimination Period
We will waive the elimination period It you become disabled within five years atter the end ot a prior period of disability which lasted more than six months and for which we paid benefits.

**Recurrent Periods of Disability**
After the elimination period has been satisfied, we will consider recurrent periods of disability to be one continuous period of disability if they result from the same cause or causes and are not separated by a recovery of more than:

- 12 months if the benefit period is to age 65 or longer and recurrence occurs before age 60; or
- 6 months in all other instances,' including recurrence at or after age 60.

If a recurrent period of disability arises from a different cause, we will consider your loss to be a separate and unrelated period of disability.

**Capital Sum Benefit**
The capital sum is shown in the schedule page. This lump sum is in addition to any other indemnity payable under this policy.

A capital loss means the entire loss or the sight in one eye, with no possible recovery; or the complete loss of a hand or foot by severance through or above the wrist or ank,le. Such loss must result from sickness or injury.

'If you suffer a capital loss while this policy is in force and survive it for 30 days, we will pay the capital sum for each such loss. But we will not pay for more than two such losses in your lifetime. If this policy has terminated, we will pay tor a capital loss which results from an injury 'sustained'while this policy was in force and which occurs within 90 days after the date of that injUry.

**Pf8sumptive Total Disability Benefit**
We will always consider you to be totally disabled, even if you are at work, if sickness or injury results in your total and complete loss of:

- the Sight of both eyes; or
- the hearing of both ears; or
- the power of speech; or
- the use of two arms, or two legs, or one arm and one leg, in. their entirety.

We will waive the unexpired pan of the elimination period from the date of loss, We will pay the monthly indemnity each month while such loss continues from the date of loSS to the end of the benefit period. You must give us satisfactory proof of loss. But you do not have to be under the continuing care of a physician,

**Rehabilitation Benefit**
If you enroll in a rehabilitation program while you are totally disabled, we will pay a benefit to meet some of the costs you may incur. All of the following conditions apply:

- **We must agree to the program in writing before you enroll.**
- The program must be a formal plan of retraining that will help you to return to work in your occupation. It must be directed by an organization or individual who is licensed or accredited to provide vocational training or education to persons who are totally disabled.
- We will pay only those costs,which are not otherwise covered by health care insurance, workers' compensation, or any public fund or program.

1100 NJ (06/01)                    PageS

Transplant and Cosmetic Surgery Benefit

If you are totally disabled because of:
- the transplant of a part of your body to another person, or
- cosmetic surgery to improve your appearance or correct a disfigurement,

we will deem you to be disabled as the result of sickness.

## Waiver of Premium Benefit

If you are totally disabled for at least 3 months (or the length of the elimination period, if shorter), we will refund any premiums due and paid during that period. Then we will waive any later premium that falls due while you are continuously so disabled or within 3 months after you recover.

On each waiver, we will renew this policy for another term of the same length as that in effect when claim began. If that term was less than twelve months and you are still disabled and eligible for waiver on a policy anniversary, we will then change the term to twelve months.

You have the right to resume payment of premiums when you recover and the waiver of premium benefit ends. At that time, you can change the term back to its original length if you wish.

This waiver of premium benefit will also apply if monthly indemnity is payable because you have met the requirements of any of the provisions called Waiver of Elimination Period, Recurrent Periods of Disability, or Presumptive Total Disability Benefit.

Nothing in this provision will change the conditions for renewal after age 65 that require you to be at work full time.

## CLAIM PROVISIONS

Notice of Claim

You must give us notice of claim within 30 days after any loss which is covered by this policy occurs or starts, or as soon after that as is reasonably possible. Notice, with sufficient information to identify you, will be deemed notice to us if given to us at our home office. 700 South Street, Pittsfield, MA 01201, or to an authorized Agent.

Claim Forms

When we get your notice of claim, we will send claim forms for filing proof of loss. If we do not send you such forms within 15 days after your notice, you may submit a written statement within the time fixed in this policy for filing proof of loss, which proves the nature and extent of the loss for which claim is made.

Time for Filing Proof of Loss

We are liable for benefits at the end of each month while you are disabled beyond the elimination period until the benefit period ends or, if earlier, the date you recover.

You must give us proof of loss at our home office or at any authorized agency office:

- for loss from disability within 90 days after the end of the period for which we are liable; and
- for any other loss within 90 days after the date of the loss.

If you cannot reasonably give us proof of loss within such time, we will not deny or reduce claim if you give us proof as soon as possible. But we will not pay benefits in any case if proof is delayed for more than one year, unless you have lacked legal capacity.

**Time of Payment of Claims**
Subject to due written proof of loss, we will pay all accrued indemnity for disability each month, Any amounts unpaid when our liability ends will be paid immediately after we receive due written proof of loss.

We will pay benefits for any other covered loss immediately after we receive due written proof of loss.

**Payment of Claims**
We will pay all benefits of this policy to the loss payee.

If you are the loss payee, any accrued benefits unpaid at your death will be paid to your estate.

If any benefit of this policy becomes payable to your estate or to a minor or incompetent person, we may pay such benefit. up to $1000. to any of your relatives by blood or marriage who we believe has a right to it. Any payment made in good faith under this provision will fully discharge us to the extent of such payment.

**Physical Examination**
We shall have the right and opportunity to have you medically examined at our expense when and as often as we may reasonably require while you claim to be disabled under this policy.

**Legal Actions**
No one can bring an action at law or in equity under this policy until 60 days after written proof has been furnished as required by this policy. In no case can an action be brought against us more than three years after written proof must be furnished.

**Misstatement Of Age**
If your age has been misstated, the benefits will be what the premium paid would have bought at the correct age. If we would not have issued this policy at your correct age, there will be no insurance and we will owe only a refund of all premiums paid for the period not covered by this policy.

**Premium and Grace Period**
The term premium is shown in the schedule page. Premiums are due on the first day of each term. You have a grace period of 31 days in which to pay each premium due after the first one.

This policy stays in force during the grace period, If you have not paid the premium by the end of the grace period, this policy will lapse at 12:01 AM the next day,

If you die, we will refund to your estate that part of any 'premium which applies to the period 'after your date of death.

**Termination of This policy At or After Age 65**

If you are not at work full time at the end of any term when you *are* age 65 or older, except by reason of total disability, this policy will terminate.

Termination will not prejudice any claim for total disability:

* which begins while this policy is in force; or
* which begins within 31 days after the date of termination as the result of an accident that occurred while this policy is in force.

If we accept any premium after you are age 65, this policy will stay In force to the end of the term which that premium covers.

**Reinstatement**

If this policy has lapsed at the end of the grace period, you can still keep it in force by paying the first overdue premium within 45 days of the time it was due-

After that, you can apply to reinstate this policy by completing an application and paying all overdue premiums. If we approve your application, your policy will be placed back in force on the date Of such approval.

But if we have not approved or refused your application in writing.within 45 days after receipt of SUCh application and overdue premium. this policy will be reinstated on that 45th day. If we refuse to place this policy back in force, we will refund your premium.

In any case, this policy will be reinstated on the date that we or our agent accept a premium and do not ask for an application.

The reinstated policy will cover only loss that begins after the date of reinstatement In all other respects, you and we will have the same rights under this pOlicy as before it lapsed, subject to any.provisions endorsed on or attached to it in connection with reinstatement.

**Suspension During Military Service**

We will suspend this policy on the date you go on active duty in the military service of any country or international authority. Such duty will not include temporary active duty by reservists for military training that lasts 90 days or less. We will refund that part of *any* premium paid for the period of such suspension.

You can place this policy back in force without evidence of good health or earned income as of the date of your discharge. To do so, you must apply in writing and pay the premium, both within 90 days after active duty ends.

We will base your premium on your age .and class of risk when this policy was first issued. If you were disabled on or before the date of discharge. you must have recovered for at least six mont.hs before we will cover a later disability from the same cause.

**Term Changes**

On *any* premium due date, you can change the term to twelve months or six months or three months. But we will not allow any change which would result in a premium not being due on a policy anniversary.

GENER.AL CONTRACT PROVISIONS

**Consideration**
We have issued this policy in consideration of the representations in your application and payment of the first term premium.  A copy of your application is attached and is a part of this policy.

**Effective Date** of InsurancQ

**Insurance** takes effect on the date of issue for the term shown in the schedule page.  Each term of this policy starts and ends at 12:01 AM standard time in the place where you live.

*Preliminary term:*  If the schedule page shows a preliminary term and premium, this policy will b,e in force from the start of that period to the date of Issue.  All of your rights under thIS policy wiii begin on the first day of that term instead of on the date of issue.  But this will not change the pOlicy anniversary.

**Entire** Contract; Changes
This policy with its riders and attached papers, if any, is the entire contract of insurance.  No change in this policy will be valid unless it has been endorsed on or attached to this policy in writing by the president, a vice president, the secretary or an assistant secretary of Berkshire Life.

No agent has a.uthority to change this policy or waive any of its provisions.

**Incontestable**
This pOlicy will be incontestable as to the statements,· except fraudulent statements, contained in the application after it has been in force for a periOd of two years during your lifetime. No claim for a disability, as it is defined in . the .policy, that begins after two years from the effective date will be reduced or denied because a disease or physical condition existed prior to the effective date. This assumes·that such disability was not excluded from coverage, by name or description, under this policy.

Conformity with State Laws
Any provision of this policy which, on the date of issue, is in conflict with the laws of the state in which you reside' on such dale is hereby amended to conform to the minimum requirements of such laws..

Berkshire Life Insurance Company of America
700 South Street
Pittsfield, MA 01201

# RESIDUAL DISABILITY RIDER

This rider is part of this policy and subject to all its conditions.

**Premium** and Renewal
The premium for this rider is shown in the schedule page. You may not renew this rider after you are age 65.

## POLICY AMENDMENTS

The provisions of the policy called "Exclusions", "Elimination Period" and "Waiver of Premium" are amended as follows:

Exclusions
We will not pay benefits for normal pregnancy or childbirth during the first 3 months of total or residual disability or, the elimination period, if longer.

Elimination Period
You *may* be totally or residually disabled to satisfy the elimination period under the benefit provisions of this policy or rider.

Waiver of Premium
You may be totally or residually disabled to meet the conditions for waiver of premium of this policy.

## DEFINITIONS

Residual disability means that you are at work and are not totally disabled under the terms of this policy but, because of sickness or injury your loss of income is at least 20% of your prior income.

Even if you have recovered from the sickness or injury that caused residual disability, we will continue to consider you residually disabled so long as your loss of income is still at least 20% of your prior income and the loss is the result of such sickness or injury.

Residual indemnity *is* a proportionate amount of the monthly indemnity for this policy.

Income means the compensation which you receive for work or personal services. after business expenses, but before any other deductions, as reported for federal income tax purposes. It includes salaries, wages, fees, commissions, bonuses, business profits, or other payments for your personal services, including pension and profit sharing contributions. If you are an owner of a closely held "e" corporation, income includes your proportionate share of the corporate taxabloe income, whethe,r received or not.

Income does not include passive or unearned income from dividends, interest, rentals or royalties. It is not Adjusted Gross Income.

*Prior income* means your average monthly income for either the last full calendar tax year, or for the two calendar tax years with the highest earnings in the three years just prior to the date on which you became disabled, whichever is greater.

*Current income* means all income, as defined above, for each month While you are residually disabled. But we will not include income received for services rendered priorOtothe start of the period of disability in your current income.

*Loss of income* means the difference between your prior income and your current income.

Expenses mean the regular business expenses which you may deduct from gross earned income for federal tax purposes.

Prior expenses mean your average monthly expenses for the same period on which your prior income is based.

Current expenses mean your expenses in each month while you are residually disabled. During a claim under this rider, the current expenses you deduct from gross earned income may not exceed your prior expenses. except as adjusted by this rider.

## BENEFIT PROVISIONS

When you are residually disabled, we will pay the residual indemnity each month as follows:
- You must become totally or residually disabled before you are age 65 while this policy is in force.
- You must remain so disabled for the length of the elimination period. No indemnity is payable during that period.
- After that, reSidual indemnity will be payable at the end of each month while you are residually disabled.

Computation of Residual Indemnity
Residual indemnity is determined by dividing (a) by (b) and mUltiplying by (C), where:
- (a) is loss of income;
- (b) is prior income; and
- (c) is monthly indemnity.

If you have a social insurance substitute rider, we will add the SIS benefit to the monthly indemnity in this equation in each month when the SIS bGnefit is payable.

How Residual Indemnity is Determined
Afterthe elimination period has been satisfied, the actual percentage of loss will apply for the first six months of reSidual disability. After that, we will compute your residual indemnity for each six month period on the average of your current income for the preceding six months.

We may agree to a shorter or longer period of averaging, or we may agree not to use averaging at all in computing your residual indemnity. However, once we have agreed on the method to be used in any given claim for residual disability, such method carinot be changed.

If averaging is being used, it will also be used in determining residual indemnity under the enhancements described below.

Enhancements to Residual Indemnity
During the first six months in which residual indemnity is payable, we will deem your loss of income to be 50% of prior income or the percentage of loss. if greater.

If your loss of income is more than 75% of prior income, we will deem such loss to be 100%.

If your loss of income is less than 20% of prior income, we will continue to pay residual indemnity so long as such indemnity is at least $500.

Adjustment of Prior Expenses'
While you are disabled under this rider, we will adjust your prior expenses to reflect any increase in fixed expenses that you then incur under the terms of a lease or other contract which was in effect at the start of claim.

Adjustment 01 Prior Income and Expenses Due to Inflation
At the end of each twelve months in a continuous claim before you are age 65, we will adjust your prior income and prior expenses to reflect changes in the cost of living since the start of claim.

Review date means the recurrence each year of the date on which you were first disabled in the same claim.

CPI·U means the Consumer Price Index for All Urban Consumers, or any later replacement of it, as published by the federal Department of **Labor."** "

Index month means the calendar month that fell ninety days before the date on which *you* were first disabled" in the same claim.

On each review date in the same claim, we will adjust your prior income and prior expenses for use in the next twelve months by the actual percentage change in the CPI-U since the index month. We will make no change that would reduce those amounts below what they were at the start of claim.

Proof of Loss
We can require any proof which we consider necessary to establish your current and prior incomes. We have the right to examine all relevant records, including your personal, business and corporate federal tax returns, as often as we may reasonably require.

During claim under this rider, we oan" require that your accounting practices be the same as those which were in effect at the time you first became disabled.

Termination of Residual Indemnity
Residual indemnity will stop when the first of the following events occurs:
- your loss of income is no longer the result of sickness or injury; or
- your loss of income is less than 20% of prior income or, if lower, the residual indemnity becomes less than $500 a month; or
- the benefit period ends; "or
- you become totally disabled; or
- you become age 65 in any claim which began before age 60.

Berkshire **Life** Insurance Company of America

David Kalib
Secretary

# AMENDMENT TO APPLICATION

This Amendment is made a part of Policy No, 20848080 to which it attached and becomes effective on the Policy Date.

It is hereby requested that the application for insurance made to Berkshire Life Insurance Company of America on September 9, 2005 be amended as follows:

Question No. 7a6:

Qualified pension plan contribution to include money purchase plan, profit sharing plan, simplified employee pension (SEP), employee stock ownership plan ESOP, 401k, 403b, SARSEP plan:
Actual Year-To-Date:  *"0"*
Actual Filed Last Calendar Year 2004:  "0"
Actual Filed Two Calendar Years Ago *2003:* "D"

Question No. 9a:

Occupational Class:  "4"

\* \* \* \* \* \* \* \* \* \*

It is agreed that these amendments and declarations are to be taken and considered a part of said application and subject to the representations and agreements therein, . .." and that the said application and these amendments are to be taken as a Whore and considered as the basis, and form part of the contract or policy issued thereon,

It ;s further represented that the statements and answers in said application were complete and true when made and that no cnanges have occurred which would make said statements and answers incorrect or incomplete as of the present date.

The undersigned aeclare that a duplicate' copy of the foregoing amendment to application is attached to the policy.

Date _ _ _ _ _ _ _ _ _ _

Brandon E Stauffer - Insured

**GUARDIAN·**

☐ BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA
Home Office: 700 South Street, Pittsfield, MA 01201
Berkshire Life Insurance Company of America is a wholly owned subsidiary of
The Guardian Life          Company of America, New York, NY

☐ THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA
Administrative Officer 777          Road,          WA 89208
(Please          concern(ed), Any
is herein referred to as the "Company,")

## Application for Insurance (Part 1)

**PROPOSED INSURED INFORMATION**

Please print:

a.   First Name  _Brandon_          MI _E_   Last Name  _Stauffer_

b.   Social Security #  _5 6 0_ - _8 5_ - _7 8 2 4_          o.   Sex  ☒ Male  ☐ Female

d.   Date of Birth (mm/dd/yyyy)  _1 0 / 1 8 / 1 9 7 9_     e.   Place of Birth  _Stanford , CA_

f.   Are you a U.S. citizen?  ☒ Yes  ☐ No          g.   Marital Status

If no, give visa type and duration:          0  Married          ☒ Single          ☐ Separated

Visa Type          ☐ Widowed          ☐ Divorced

Visa Duration

h.   Address  _86 Spruce Street , Apt # 1_

(If mailing address is PO Box, include street address as well)

City  _Princton_          State  _NJ_          Zip _08542_

L.   How long at this address?  _2 weeks_

j.   Home phone (          )          k.   e-mail address

L.   If less than 2 years at current address, please furnish previous address:

Address  _69 Eighth Avenue , # 53_

City  _New York,_          State  _NY_   Zip _10014_

m.   **Telephone interview** – if more information is needed, a representative may call you. Show the most
convenient time and place for such a call weekdays between the hours of 9:00 a.m. and 9:00 p.m.

☐ Home  ☒ Business  ☐ Other – Phone ( _609_ ) _483 - 5656_ Ext.          Time _____ ☐ a.m. ☐ p.m.

**BUSINESS INFORMATION**

a.   Name of Employer  _Domain Associates, LLC_

b.   Address  _One Palmer Square , Suite 515_

(If mailing address is PO Box, include street address as well)

City  _Princeton_          State  _NJ_   Zip _08542_

Business Phone ( _609_ ) _483 - 5656_

c.   Occupation          d.   Job Title  _Analyst_

e.   Nature of Business  _Venture Capital Management_

f.   How many years employed?  _Hired 9-15-05_   (If less than 2 years please furnish previous employer below)

g.   Former Employer  _Easton Associates, LLC_

Address

City  _New York_          State  _NY_   Zip

h.   Occupation          i.   Job Title  _Consultant_

j.   Nature of Business  _Consulting firm specializing in business strategy_

## 4 OCCUPATIONAL INFORMATION

**a.** Describe, in order of importance, all duties of your occupation. Include all activities that are performed in connection with the duties of your occupation, including but not limited to travel, sales and supervisory.

| Description of Specific Duties | % of Time Devoted to Each Duty |
|---|---|
| *Analysis of investment opportunities* | 75% |
| *Meetings with companies invested in (travel involved)* | 25% |

**b.** Describe exact physical duties of your occupation (lifting, climbing, driving, etc.). If none, so state.
*Occasional airport travel*

**c.** Describe any tools or equipment you use (hand tools, trucks, machinery, heavy equipment, etc.). If none, so state.
*NONE*

**d.** Is this a home-based occupation? ○ Yes ☒ No

**e.** Have you been continuously at work full time performing the usual duties of your occupation for the past six months? ☒ Yes ☐ No
If no, explain:

**f.** How many hours per week are you at work in this occupation?  *40* hours

**g.** Number of years:  In this occupation: *5 yrs*     with this employer *Started 9-8-05*

**h.** Do you have any other part- or full-time jobs? ○ Yes ☒ No
If yes, describe

**i.** Do you supervise any employees? ☐ Yes ☒ No    If yes, how many? ____

**j.** Are you a business owner? ☐ Yes ☒ No

**k.** What percentage of the business do you own? _____ %

**l.** What type of business do you work for or own?
○ Sole Proprietorship    ☐ "S" Corporation    ☒ Limited Liability Corporation (LLC)
○ Partnership    ☐ "C" Corporation    ☐ Limited Liability Partnership (LLP)
    ☐ Other

## THE FOLLOWING QUESTIONS APPLY TO THE PROPOSED INSURED

(Please provide details in Remarks and Special Requests, Section 13, to all "Yes" answers, with the exception of a.c.)

| | | Yes | No |
|---|---|---|---|
| **a.** | Do you intend to reside or travel outside of the U.S.? | ☒ | ○ |
| **b.** | Do you drive a motor vehicle? | ☒ | □ |
| | Driver's License State _CA_    Driver's License # _B6003611_ | | |
| **c.** | Within the past five years, have you been charged with and/or convicted of any motor vehicle moving violations or had your driver's license suspended or revoked? (If yes, details must include date of violation, description of violation and penalty). | □ | ☒ |
| **d.** | Within the last ten years   you been convicted of a felony, or is such a charge pending against you? | ○ | ☒ |
| **e.** | Have you ever had a professional license suspended, revoked, or is such license under review, or have you been disbarred? | □ | ☒ |
| **f.** | Within the last three years have you participated in any of the following: piloting any type of aircraft; mountain climbing or rock climbing; scuba diving; hang gliding; parachuting or skydiving; or motor vehicle racing? (If yes to any, complete Aviation and/or Avocation Supplement.) | □ | ☒ |

Yes    No

i.  Do you currently use a nicotine patch or nicotine gum?

j.  Do you plan to apply for or are you currently applying for any other life, disability or accident insurance? (In Remarks and Special Requests, Section 13, include amount and company applied with, and whether this other insurance will be in addition to or in lieu of insurance with Berkshire or Guardian.)    ☐  ☒

k.  Have you had or been treated for cancer, heart attack, diabetes, or any disease of the liver, lungs, or kidneys?    ☐  ☒

l.  Are you currently receiving any medical advice or treatment for any medical, surgical or psychiatric condition?    ☐  ☒

## 9  HEALTH    PERSONAL HISTORY OF THE PROPOSED INSURED

a.  Name and Address of your personal physician. If none, so state
    Dr. Alan Kadet   65 Central Park West  #16 New York, NY 10023

b.  Date and reason last consulted?  April 2005 for routine physical

c.  What treatment or medication was given or recommended?  none

d.  Height:  6  feet  2  inches  Weight:  165  lbs.

e.  Weight change past year☐ Gain  ☐ Loss  ____ lbs.
    Reason for change:  no change

(Please provide details in Remarks and Special Requests, Section 13, for any "Yes" answers to Questions 9.f. - 9.g.)

Yes    No

f.  Have you ever had or been treated for cancer or tumor?    ☐  ☒

g.  In the last ten years, have you had, been treated for or received a consultation or counseling for:

    i.  high blood pressure, chest pain or disorder of the heart or circulatory system?    ☐  ☒

    ii.  diabetes or disorder of the glands, bone, blood or skin?    ☐  ☒

    iii.  complications of pregnancy, infertility, or any disorder of the breasts, reproductive or genital organs, prostate, kidneys, or urinary systems?    ☐  ☒

    iv.  hernia, hepatitis, or disorder of the liver, gall bladder, stomach, pancreas, spleen, intestines or rectum?    ☐  ☒

    v.  arthritis, rheumatism, or disorder of the joints, limbs or muscles?    ☐  ☒

    vi.  disorder or condition of the back, neck or spine?    ☐  ☒

    vii.  allergy, asthma, sinusitis, emphysema, disorder of the lungs or respiratory system, or sleep apnea?    ☒  ☐

    viii.  epilepsy, stroke, dizziness, headache, or disorder of the brain, or spinal cord?    ☐  ☒

    ix.  disorder of the eyes, ears, nose or throat?    ☐  ☒

    x.  anxiety, depression, nervousness, stress, mental or nervous disorder, or other emotional disorder?    ☐  ☒

    xi.  Chronic Fatigue Syndrome, Fibromyalgia, Epstein Barr virus or Lyme Disease?    ☐  ☒

h.  Do you have any loss of hearing or sight, an amputation of any kind, or any physical deformity, impairment or handicap?    ☐  ☒

|  |  | Yes | No |
|---|---|---|---|
| l. | Within the past ten years, have you been diagnosed by or received treatment from a member of the medical profession for Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC), or any deficiency of the immune system such as Human Immunodeficiency Virus? | ☐ | ☒ |
| j. | i. Are you currently taking prescribed medication? | ☐ | ☒ |
|  | ii. Are you currently taking non-prescription medication? | 0 | ☒ |
| k. | i. Have you ever regularly or repeatedly used stimulants, hallucinogens, narcotics or any other controlled substance? | ☐ | ☒ |
|  | ii. Have you ever had or been advised to have counseling or treatment for alcohol or drug use? (If yes, complete the Alcohol and Drug Usage Supplement.) | 0 | ☒ |
| f. | Are you now pregnant? If yes, expected delivery date: _____ 0. | ☐ | ☐ |
| m. | Within the past five years, have you had a sickness or injury for which you have made a benefits claim or for which you will make a benefits claim? | ☐ | ☒ |
| n. | Within the past five years, have you had a physical exam or check-up of any kind? | ☒ | 0 |
| o. | Within the past five years, have you been advised to have surgery or any diagnostic tests that were not performed, except for HIV tests? | ☐ | ☒ |
| p. | Other than as previously stated on this application, in the last five years [ ] your [ ]ived medical advice from physicians, medical or mental health professionals, counselors, psychotherapists, or other practitioners, and have you been a patient in a hospital, clinic, sanatorium, or other medical facility? | ☐ | ☒ |
| q. | Do you have a family history of diabetes, cancer, high blood pressure, heart disease, [ ] [ ] mental [ ] or suicide? | ☒ | 0 |

|  | AGE if LIVING | AGE at DEATH | AGE at DEATH |
|---|---|---|---|
| FATHER | 55 |  |  |
| MOTHER | 58 |  |  |
| BROTHERS and SISTERS | None |  |  |
| No. Living |  |  |  |
| No. Dead |  |  |  |

**7. OTHER DISABILITY INSURANCE COVERAGE ON THE PROPOSED INSURED**

a. List all personal and business disability income insurance now in force, applied for, or eligible for within the next 12 months in all companies, including Guardian or Berkshire. If none, check here ☑.

| Type of Insurance | Category | Status |
|---|---|---|
| DI = Disability Income Insurance | IND = Individual | I = In Force |
| OE = Overhead | G = Group | AP = Applied For, or Date of Eligibility |
| DBO = Buy-Out | A = Association | |
| KEY = Key Person | | |

| Insurer: | | | | |
|---|---|---|---|---|
| Type of Insurance: | | | | |
| Category: | | | | |
| Status: | | | | |
| Policy Number (if known): | | | | |
| Basic Monthly Indemnity: | $ | $ | $ | $ |
| Social Insurance Benefit: | $ | $ | $ | $ |
| Automatic Increase Option: | % | % | % | % |
| Future Increase Option: | $ | $ | $ | $ |
| Does employer pay premium and not include it as taxable income to you? | ☐ Yes   ☐ No | ☐ Yes   ☐ No | ☐ Yes   ☐ No | ☐ Yes   ☐ No |
| If group coverage, is it convertible? | ☐ Yes   ☐ No | ☐ Yes   ☐ No | ☐ Yes   ○ No | ☐ Yes   ☐ No |

b. Replacement

| Is the insurance being applied for replacing this coverage? | ☐ Yes   ☐ No | ☐ Yes   ☐ No | ☐ Yes   ☐ No | ☐ Yes   ☐ No |
|---|---|---|---|---|
| Date of Replacement: | | | | |
| Amount to be Replaced: | $ | S | $ | $ |

*When issuing any insurance as a result of this application, the Company will rely on the fact that the Proposed Insured can and will permanently terminate the coverage as specified above following the delivery of the policy and will not at any time reinstate this coverage. If the coverage is not terminated, benefits under any policy issued based upon this application may be reduced by the amount payable under such existing policies.*

DI-8008 NJ                                              501'11

## PERSONAL FINANCIAL PROFILE (EIG) — NET PROPOSED INSURED

a. **Earned Income.** Earned income means the compensation that you receive for work or personal services, after business expenses, but before any other deductions, as reported for federal tax purposes on IRS Form 1040. Earned income does not include unearned or passive income and is not Adjusted Gross Income. Fill in the amounts requested for last year and two years ago using the Proposed Insured's individual and/or business income tax returns and supporting schedules. Note: Do not list income that is not reported to the IRS. Explain in Remarks and Special Requests, Section 13, any significant fluctuations between years. Describe any changes since the end of the most recent calendar year. Put loss amounts in parentheses.

| | | | |
|---|---|---|---|
| 1. Non-owner employee salary, wages and bonus from Form W-2 | $ 30,664 | $ 62,140 | $ 55,364 |
| 2. Business owner salary, wages, and bonus from Form W-2 | $ | $ | S |
| 3. Sole Proprietor net income (after business expenses) from Form 1040, Schedule C | $ | S | $ |
| 4. Share of Partnership or Sub-Chapter "S" corporation income (after business expenses) shown on Form 1040 or 1120 "S", Schedule K-1 | $ | $' | $ |
| 5. Qualified pension plan contribution to include money purchase plan, profit sharing plan, simplified employee pension (SEP), employee stock ownership plan ESOP, 401k, 403b, SARSEP plan | $ | $ | $, |
| 6. Other earned income (explain source) | $ | $ | $ |
| 7. Total Earned Income (add lines 1-6) | $ | $ | $ |

b. **Unearned Income.** Unearned income or passive income includes, but is not limited to, income from dividends, interest, investments, rentals, royalties, retirement plans or from business interests as an inactive owner.

This includes capital gains, interest income, tax exempt income, investment income, pensions, annuities, alimony. List all unearned income that exceeds 10% of total earned income in line 7 above.

| | | |
|---|---|---|
| $ | $ | $ |

Sources:

c. **Net Worth**
Does your net worth exceed $5 million?    ☐ Yes    ☒ No
If Yes, describe your net worth in detail. Net value is asset value less any outstanding debt or mortgage on the asset.

Cash, Savings, Stocks, Bonds    $_____

Fair Market Value of your business (excluding goodwill)    $_____

Personal Property    $_____

Real Estate    $_____

Other (explain)    $_____

d. **Bankruptcy**
.. Have you ever filed bankruptcy?    ☐ Yes    ☒ No
☐ Personal    ☐ Business

e. Date bankruptcy filed?    _____

f. Date bankruptcy discharged?    _____

## 8  PREMIUMS

a. **Mode**
☒ Annual  ☐ Semiannual  ☐ Quarterly  ☐ Monthly (list bill only – this may not be available for all products)
☐ Automatic payment plan (complete the Request for Guard-O-Matic Arrangement form)
   ○ New Service   ○ Add to my existing service
☐ Other

b. Who is to pay premiums? ___ *Domain Associates*

c. Send premium notices to:
☐ Residence                        ☐ List Bill
☐ Owner's address                 ☐ New – Billing Name ___ – ___
☒ Business                         _____
   Other                           Common billing date _____
   _____         ☐ Existing account # _____

d. **Prepayment of Premium**
☒ No money has been submitted with this application for proposed insurance.
☐ $_____ has been submitted with this application for proposed insurance.
   If money is submitted when this application is signed, the terms of the Conditional Receipt shall apply if conditions are met.

|  | New | Existing | Plan # |
|---|---|---|---|
| ● The policy applied for is through an association of which I am a member. | ☐ | ☐ | _____ |
| Association Name _____ – |  |  |  |

---

## Complete if applying for an Employer-Sponsored Plan (QSPP, VIP)

f. Is the premium for the disability plan being applied for being paid with after-tax personal funds? ☐ Yes  ○ No

g. The premium for the disability plan being applied for is being paid:

|  | New | Existing | Plan # |
|---|---|---|---|
| ○ Through payroll deduction under a Voluntary Income Protection Plan (VIP). | ☐ | ☐ | _____ |
| ○ By my employer as an employee benefit under a Qualified Sick Pay Plan (QSPP) | ☐ | ☐ | _____ |
| ☐ With funds bonused to me by my employer under an executive bonus plan. (If chosen, 8.h. should be checked "None.") |  |  |  |
| ☐ Through my employer-sponsored cafeteria plan (Section 125 plan). |  |  |  |

h. What part of the premium for this policy will your employer pay?  $_____  or _____% ○ None

i. How much of this premium will be included in your taxable income?  $_____  or _____% ○ None

---

## 9  COMPLETE IF THIS SECTION IF APPLYING FOR PERSONAL DISABILITY INSURANCE
(If applying for PayGuard, complete Section 12.)

a. Policy Form No.  *1100*

   Monthly Indemnity  $ *4250*          Elimination/Waiting Period  *60*
   Indemnity Benefit Period  *65*        Occupational Class  *4P* –

b. **Supplemental Benefits** (Note: Supplemental Benefits are not available for Executive ○)
☒ Residual Disability (regular)          ○ Group Disability Replacement  $_____ –
☐ Residual Disability (2-year cap)       ○ Social Insurance Substitute _____ –
○ Automatic Increase                     ○ Future Increase Option _____ –
○ Partial Disability                     ☐ Cost of Living Adjustment  ☐ 3%  [☐] 6%
☐ Unemployment Premium Waiver           ○ Other _____

c. Premium Structure  ☒ Level  ☐ Graded

## 10. COMPLETE THIS SECTION IF APPLYING FOR OVERHEAD EXPENSE INSURANCE

- O Professional (POE)  ☐ Business (BOE)
  - Monthly Indemnity/Benefit Amount  $
  - Monthly Indemnity/Benefit Period  _____ months
  - Elimination/Waiting Period  _____ days
  - Occupational Class  _____

b  Supplementa, Benefits
  - O Future Purchase Option  $. _ _ _ _ _ _ _
  - O Residual Disability  __

c  Your share of covered expenses?  $ _____ . and _____ % of total.

d  Are there other employees in the firm who generate revenue? ☐ Yes ☐ No
   If yes: what is the compensation fOT these employees and the percentage ot gross revenue they generate?
   _____

e  Owner information (if other than the InsUred)
   - Name 6f Owner  _____
   - Address  _____
   - Social Security #/Tax $^{10}$ #__ _____  Relationship to Proposed Insured  __

## Monthly Expenses of the Busfness Entity

.t  What are the current average monthly overhead expenses incurred for the items shown? (If responsibility for expenses shared Jointly with others, include only the portion for which the Proposed Insured is responsible )

| Item | Amount |
|---|---|
| Rent | $ _ _ _ _ _ |
| Electricity, Telephone, Heat and Water | _____ |
| Laundry . | _____ |
| Salanes of Employees* (POE Only) | _____ |
| Real Estate Taxes | _____ |
| Depreciation or Scheduled Installment Payments of Prfncipal of Debt | _____ |
| Interest on Debt | _____ |
| Rent or Lease Expense Of Furniture, EqUipment | _____ |
| Other Normal, Necessary and Customary Fixed Expenses· | |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| TOTAL (should agree with 10.c.) | $. _ _ _ _ _ |

*Exclude compensation fof members of Insured's profession

## 11. COMPLETE THIS SECTION IF APPLYING FOR DISABILITY BUY-OUT INSURANCE

a   Funding.  ☐ Lump Sum   O Monthly   ☐ Down Payment

Indemnity/Benefit Amount    $_____                                    monthly $_____                lump sum

Indemnity/Benefit Period    _____    months

Elimination/Waiting Period    _____    months

Occupational Class    _____

b   **Supplemental Benefits**

   O Presumptive Permanent Disability Benefit (include with all monthly and down payment plans)

   O Future Purchase Option

   Option Amount  $,  _____    $_____

                  (monthly)                    (lump sum)

c   **Premium Structure**   O Level   O Step Rate

d  . Type of buy-sell agreement (in force or to be drafted)-

   O Cross Purchase          O Entity Purchase          O Trusteed Cross Purchase

   Status of buy-sell agreement.  O In force and dated    _____

                  O Date to be drafted by    ___ ___ _____

e   Owner Information

   Name of Owner (First, MI, Last) or name of trust, company or other owner

   _____

   Address    _____

   Social Security #/Tax 10 #    ____    ____          Relationship to Proposed Insured    ____

   Please complete the following if owner is a trust    Date of Trust    ____

   Complete Names of Trustees    _____

f   Give names of all other stockholders or partners  (If there are any on whom DBO is not carried or proposed, explain in Remarks and Special Requests, Section 13

| Name | Title | % Owned | Amount of DBO in Force | Amount of DBO Proposed |
|------|-------|---------|------------------------|------------------------|
|      |       |         |                        |                        |
|      |       |         |                        |                        |
|      |       |         |                        |                        |

g-  Does a familial relationship exist among any of the above stockholders or partners?    ☐ Yes  O No
   If yes, describe    _____

h   What is the current Fair Market Value of the business organization? '    $    ____

I   Indicate type of business organization·

   ☐ Professional Corporation/Personal Service Partnership    ☐ Commercial Business

j    Describe business valuation method in detail (separately provide all supporting schedules and information)

_____

_____

_____

k    Business Financial

| | | | Actual Filed Last Calendar Year | Actual Filed Calendar Years Ago |
|---|---|---|---|---|
| 1 Total Assets | $ | | | |
| 2 Total Liabilities | $ | Actual Year to Date | | |
| 3 Business Net Worth (1 – 2) | $ | | | |
| 4. Gross Annual Sales | | | $ | $ |
| 5. Net Profit After Taxes | | $ | | |

**COMPLETE        SECTION        FOR REDUCING**

a    O  PayGuard      O  Business Reducing Term

Monthly Benefit Amount      $ _____          Elimination/Waiting Period _____

Benefit Period _____                          Occupational Class _____

b    Loss Payee of reducing term policy _____          **Tax** ID _ – _

(Loss Payee must be the Individual or entity that the money is owed to )

Owner of reducing term policy _____          Tax 'O _

**Information About the Economic Need for this Insurance**

c.    Explain the reason that the obligation was incurred:

O Business Loan              D Employment Contract

☐ Purchase Agreement        O Other (describe) ___

Details ___

d    Names of all debtors or guarantors

_____    _____    _____

e.    Name and address of creditor or person to whom guarantees have been given

_____

_____

f.    Date obligation took effect: _____

   (month)      (day)      (year)

Periodic payment in the amount of $          is to be made each month for _ months

Periodic payment in the amount 01 $          is to be made each month for _____ months '

Periodic payment in the amount of $          is to be made each month for _ months

I am responsible for payments for a total of _____ months

## 13. REMARKS AND SPECIAL REQUESTS

Provide all details to any "yes" answers, identifying each detail by question number. Include, if applicable, diagnosis or symptoms, tests performed, dates, types and amounts of medication, length of disability, degree of recovery, and names and addresses of all physicians, medical or mental health professionals, counselors, psychotherapists, practitioners or hospitals. Also include in this section any special policy requests such as specific policy date other than as provided by the terms of this application.

#11 . The highly
effective, and I rarely experience any symptoms; when I do,
they are mild in nature. I also occasionally experience sinus
infections, although they rarely require prescription medication.
My mother was diagnosed with breast cancer in 2003, but she
is now in remission. My grandfather had prostate cancer but is now living well.
My other grandfather passed away as a result of colon cancer.

#1  See 5 A+

5Q) mother, breast cancer
grandfather, prostate cancer

## 14. AMENDMENTS OR CORRECTIONS (For Home Office or Customer Service Office Use Only)



nal and c

Princeton, NJ

City and State

_Signature of Proposed Insured_

_Witness_

**GUARDIAN"**

Life Customer Service Office
3900 Burgess Place
Bethlehem, PA 18017

Disability Customer Service Office
700 South Street
Pittsfield, MA 01201

☐ THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA
☑ THE GUARDIAN INSURANCE & ANNUITY COMPANY, INC.
☐ BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA
(Please check appropriate company(ies)   Any insurer checked above
is herein referred to as the "Company")

## Representations to the Medical Examiner (Part 2)

This application is to be attached to and made part of the policy

### PROPOSED INSURED INFORMATION

Please print

1a. First Name **BRANDON**   MI **E**   Last Name **STAUFFER**

b. Date of Birth (mm/dd/yyyy) **10/18/1979**

c. Name and Address of your personal physician. If none, so state.
**Alan Kadet, M.D. Central Park West, N.Y., N.Y.**

d. Date and reason last consulted _____

e. What treatment or medication was given or recommended? **None. WNL**

f. Weight change past year ☐ Gain   ☐ Loss   _____ lbs.
Reason for change: _____

(If you answer "Yes" to questions 2-14, provide details in item #15 on the next page.)

| | | Yes | No |
|---|---|---|---|
| 2. | Have you ever had or been treated for cancer or tumor? | ☐ | ☑ |
| 3. | In the last ten years, have you had, been treated for or received a consultation or counseling for: | | |
| i. | high blood pressure, chest pain or disorder of the heart or circulatory system? | ☐ | ☑ |
| ii. | diabetes or disorder of the glands, bone, blood or skin? | ☐ | ☑ |
| iii. | complications of pregnancy, infertility, or any disorder of the breasts, reproductive or genital organs, prostate, kidneys, or urinary systems? | ☐ | ☑ |
| iv. | hernia, hepatitis, or disorder of the liver, gall bladder, stomach, pancreas, spleen, intestines or rectum? | ☐ | ☑ |
| v. | arthritis, rheumatism, or disorder of the joints, limbs or muscles? | ☐ | ☑ |
| vi. | disorder or condition of the back, neck or spine? | ☐ | ☑ |
| vii. | allergy, asthma, sinusitis, emphysema, disorder of the lungs or respiratory system, or sleep apnea? | ☑ | ☐ |
| viii. | epilepsy, stroke, dizziness, headache, or disorder of the brain, or spinal cord? | ☐ | ☑ |
| ix. | disorder of the eyes, ears, nose or throat? | ☐ | ☑ |
| x. | anxiety, depression, nervousness, stress, mental or nervous disorder, or other emotional disorder? | ☐ | ☑ |
| xi. | Chronic Fatigue Syndrome, Fibromyalgia, Epstein Barr virus or Lyme Disease? | ☐ | ☑ |
| 4. | Do you have any loss of hearing or sight, an amputation of any kind, or any physical deformity, impairment or handicap? | ☐ | ☑ |
| 5. | Within the past ten years, have you been diagnosed by or received treatment from a member of the medical profession for Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC), or any disorder of the immune system such as Human Immunodeficiency Virus? | ☐ | ☑ |
| i. | Are you currently taking prescribed medication? | ☑ | ☐ |
| ii. | Are you currently taking non-prescription medication? | ☐ | ☑ |

C-MED 2002 NJ



IMNB3200000240201

|   |   | Yes | No |
|---|---|---|---|
| 7. | Have you ever regularly or repeatedly used stimulants, hallucinogens, narcotics or any other controlled substance? ........... | 0 | ☑ |
| | V Have you ever had or been advised to have counseling or treatment for alcohol or drug use? (If yes complete the Alcohol and Drug Usage Supplement.) | ☐ | ☑ |
| 8 | Are you now pregnant? ....................... If yes, expected delivery date | ☐ | ☑ |
| 9 | Within the past five years, have you had a sickness or injury for which you have made a benefits claim or for which you will make a benefits claim? ........................... | ☐ | ☑ |
| 10. | Within the past five years, have you had a physical exam or check-up of any kind? ........... | ☑ | ☐ |
| 11. | Within the past five years, have you been advised to have surgery or any diagnostic tests that were not performed, except for HIV tests? ........... | 0 | ☑ |
| 12. | Other than as previously stated on this Representations, in the last five years have you received medical advice from physicians, medical or mental health professionals, counselors, psychotherapists, or other practitioners, and have you been a patient in a hospital, clinic, sanatorium, or other medical facility? • | ☐ | ☑ |
| 13 | I. Have you smoked cigarettes in the past 24 months? elf you have quit, date last used | ☐ | ☑ |
| | II Have you used tobacco in any form in the last 12 months? If "No," have you used tobacco in any form in the last 24 months? If "No," have you used tobacco in any form in the last 48 months? (If you have quit, date last used ) | ☐ | ☑ |
| | III Do you currently use a nicotine patch or nicotine gum? • | ☐ | ☑ |
| 14 | Do you have a family history of: diabetes, cancer, high blood pressure, heart disease, mental illness or suicide? | ☐ | ☑ |

|  | Age if Living | Cause of Death | Age at Death |
|---|---|---|---|
| FATHER | 55 | Good | |
| MOTHER | 56 | Fair | |
| BROTHERS and SISTERS | | | |
| No. Living | — | | |
| No. Dead | — | | |

15. **DETAILS OF "YES" ANSWERS. IDENTIFY QUESTION & NUMBER. CIRCLE APPLICABLE ITEMS:**
Give diagnosis or symptoms, tests performed, dates, types and amounts of medication, length of disability, degree of recovery, and names and addresses of all physicians, medical or mental health professionals, counselors, psychotherapists, practitioners or hospitals. Additional paper may be attached if necessary to explain details.

3 VII Asthma as a Child Do not for 15 yrs. - seasonal allergies
nr allergy Immuno therapy. controls condition 12. Gold Cross A Leukaker
P.A. Princeton N.J. last saw person over 2 yrs ago
1 for 3 VII 10 for 16.

I understand and agree that the statements and answers in this Representations to the Medical Examiner are written as made by me, to the best of my knowledge and belief are full, complete and true; and that they shall be a part of the contract of insurance, if issued.

Any person who includes false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

Signed at _Princeton, NJ_ _1/5/2005_ day of _5th_ _2005_

_Witness_

O-MED-2005 NJ

**PROOF OF SERVICE**
*Berkshire Life Insurance Company of America v. Stauffer, et al.*
*U.S. District Court, Northern District of California,*
*San Jose Branch Case No. C07-02622 RMW ( PVT)*

I am a resident of the State of California, over the age of eighteen years and not a party to this action. My business address is 1050 Battery Street, San Francisco, California 94111. On May 5, 2008, I will serve the following documents:

FIRST AMENDED CROSS-CLAIM FOR BENEFITS DUE UNDER THE PLAN, FOR ENFORCEMENT OF CROSS-COMPLAINANT'S RIGHTS UNDER THE PLAN, FOR CLARIFICATION OF CROSS-COMPLAINANT'S RIGHTS TO FUTURE BENEFITS AND FOR COSTS AND ATTORNEYS FEES (29 U.S.C. Section 1332) REQUEST FOR JURY TRIAL

in the manner as provided by Rule 5(b) of the Federal Rules of Civil Procedure by placing a true copy of the document(s) listed above, enclosed in a sealed envelope, addressed as set forth below, for collection and mailing on the date and at the business address shown above following our ordinary business practices. I am readily familiar with this business practice for collection and processing of correspondence for mailing with the United States Postal Service. On the same day that a sealed envelope is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service with postage fully prepaid. I am employed in the county where the mailing described below occurred, and am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. I placed a true copy of the specified document(s) in a sealed envelope(s) with postage thereon fully prepaid. The envelope(s) will be deposited with the United States Postal Service on this day in the ordinary course of business in San Francisco, California.

**ATTORNEYS FOR PLAINTIFF:**
**BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA**
Sean P. Nalty, Esq., SBN 121253
WILSON, ELSER, MOSKOWITZ, EDLEMAN & DICKER
525 Market Street, 17th Floor
San Francisco, CA 94105-2725
Tel: (415) 433-0990
Fax: (415) 434-1370

**(X) (FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed at San Francisco, California, on May 5, 2008.

Mary M. Martin

11

Case No.: C 07-02622 RMW
FIRST AMENDED CROSS-CLAIM FOR BENEFITS DUE TO CROSS-COMPLAINANT UNDER THE PLAN, FOR ENFORCEMENT OF CROSS-COMPLAINANT'S RIGHTS UNDER THE PLAN, FOR CLARIFICATION OF CROSS-COMPLAINANT'S RIGHTS TO FUTURE BENEFITS AND FOR COSTS AND ATTORNEYS FEES (29 U.S.C. Section 1332); REQUEST FOR JURY TRIAL